[No. S041623. Nov. 22, 1995.]

KATHERINE ADAMS, Plaintiff and Appellant, v.
AARON PAUL, Defendant and Respondent.

---

## COUNSEL

Barry Balamuth and Kelly Balamuth for Plaintiff and Appellant.

Melamed & Birkley, Howard R. Melamed, Hansen, Boyd, Culhane & Watson, Kevin R. Culhane, Betsy S. Kimball and Joseph Zuber for Defendant and Respondent.

---

## OPINION

**ARABIAN, J.**—"The most common error of the attorney engaged in litigation is the failure to file the client's claim or cause of action within the time required by a statute of limitations." (2 Mallen & Smith, Legal Malpractice (3d ed. 1989) § 24.13, p. 481, fn. omitted.)

We granted review in this matter to determine when, in the event of such a failure or misadvice as to the applicable limitations period, the plaintiff sustains "actual injury" for purposes of tolling the statute of limitations in a subsequent suit for professional negligence. In light of the

numerous variables arising in "missed statute" cases, we conclude, consistent with the general rule, that "the determination of the time when plaintiff suffered damage raises a question of fact." (*Budd* v. *Nixen* (1971) 6 Cal.3d 195, 202 [98 Cal.Rptr. 849, 491 P.2d 433].) If the material facts are undisputed, the court may, however, resolve the issue of when the plaintiff suffered manifest and palpable injury as a matter of law. (*Id.* at p. 202.)

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Katherine Adams brought this legal malpractice action in October 1992 against her former attorney Aaron Paul, claiming he negligently provided incorrect advice regarding the time period within which she should file an underlying wrongful death action. Since we are reviewing the case following the trial court's sustaining of defendant Paul's demurrer, we draw the relevant facts from Adams's pleadings.

On April 17, 1983, Adams's former husband, Warren Standeven, shot and killed their son. Later that same day, he died in a fire at the family home. In late 1983, Adams contacted Attorney Steven Kazan for general advice concerning her rights surrounding her son's death. Kazan, whose legal practice primarily involved personal injury law, referred Adams to defendant Paul, an experienced probate attorney, for purposes of setting up a probate estate, representing the administrator, and advising Adams and the Kazan office about pursuing claims and lawsuits.

On April 6, 1984, Paul received telephone calls from Adams and the Kazan office informing him Adams intended to file against the estate of her late husband. Paul agreed to represent the estate and to inform Adams and the Kazan office of the time limits for bringing claims and related actions. Several days later, Paul advised Adams the time for filing against the estate would not begin to run until letters of administration were issued. If the claim were rejected, a legal action should be filed 90 days after formal written notification.

Letters of administration were issued on October 16, 1984. On January 21, 1985, Paul told Adams the deadline for filing a claim against the estate was February 16, 1985, but failed to indicate the one-year statute of limitations on any wrongful death action had commenced when letters of administration were issued. Nor did he inform her of alternative procedures for seeking recovery limited to the estate's insurance proceeds.

Adams filed a claim against the estate on February 12, 1985, which the administrator formally rejected in September 1986. Within 90 days thereof,

on December 8, 1986, Adams filed a wrongful death action. In March 1990, the estate moved for summary judgment contending the complaint was barred by the statute of limitations.

Represented by the Kazan office, Adams opposed the motion on the ground the estate was estopped from asserting the statute of limitations defense. In support of this position, on April 3, 1990, Paul executed a declaration acknowledging his failure to advise Adams correctly on the deadline for filing the wrongful death action. Following this declaration Paul did nothing further on Adams's behalf.

On June 1, 1990, the trial court denied the motion for summary judgment, finding triable issues of fact as to whether Paul, while acting in the capacity of attorney for the estate, made material representations to Adams or Kazan regarding the time for filing a complaint against it, and whether Adams and Kazan reasonably relied upon such representations.

On October 21, 1991, the parties to the wrongful death action settled the lawsuit. Kazan continued to represent Adams until March 1992, when she retained new counsel to investigate a potential legal malpractice action against Paul. On October 1, 1992, Adams filed the original complaint in this case. In her second amended complaint, she alleged Paul's negligent advice and conduct resulted in her having to settle and dismiss the wrongful death action, and thereby receiving substantially less than she should have obtained had the statute of limitations defense not been raised. She sought damages in excess of $200,000.

Paul demurred on the ground the action was time-barred under Code of Civil Procedure section 340.6, subdivision (a), because it had been filed more than one year after Paul had executed his declaration admitting he gave erroneous advice. The trial court sustained the demurrer without leave to amend and dismissed the complaint. Following the reasoning of *Finlayson* v. *Sanbrook* (1992) 10 Cal.App.4th 1436 [13 Cal.Rptr.2d 406], the court determined Adams had suffered actual injury when the statute of limitations expired in her wrongful death action; and therefore her malpractice claim was untimely.

The Court of Appeal affirmed but applied a different rationale as to when Adams had suffered actual injury, finding it occurred when she was forced to oppose the motion for summary judgment in April 1990. At that point, the integrity of her lawsuit had been compromised, and she was required to engage an attorney to handle Paul's alleged error. Since she discovered the negligence no later than that time in view of Paul's declaration, the applicable statutory period began then. Thus, the malpractice action filed more than two and one-half years later was time-barred.

DISCUSSION

Recently in *ITT Small Business Finance Corp.* v. *Niles* (1994) 9 Cal.4th 245 [36 Cal.Rptr.2d 552, 885 P.2d 965] and *International Engine Parts, Inc.* v. *Feddersen & Co.* (1995) 9 Cal.4th 606 [38 Cal.Rptr.2d 150, 888 P.2d 1279], a majority of this court concluded in those very narrowly drawn circumstances that adverse judgment, settlement, dismissal, or the like constituted actual injury within the meaning of Code of Civil Procedure section 340.6, subdivision (a)(1) (section 340.6(a)(1)).[1] Those decisions were not paradigms, however, and did not articulate a "rule for all seasons." As this court recognized almost 25 years ago in *Budd* v. *Nixen, supra*, 6 Cal.3d at pages 201-202, depending upon the particulars, actionable harm may occur at any one of several points in time subsequent to an attorney's negligence. Hence, as with other causes of action, the determination is generally a question of fact. (*Id.* at p. 202; see. e.g., *McCann* v. *Welden* (1984) 153 Cal.App.3d 814, 824 [200 Cal.Rptr. 703]; cf. *Brown* v. *Bleiberg* (1982) 32 Cal.3d 426, 436 [186 Cal.Rptr. 228, 651 P.2d 815] [medical malpractice injury]; *Oakes* v. *McCarthy Co.* (1968) 267 Cal.App.2d 231, 255 [73 Cal.Rptr. 127] [injury from negligent construction].)

Moreover, we find nothing in the language or history of section 340.6(a)(1) indicating the Legislature intended, in codifying decisional law, to alter the well-settled principle that in legal malpractice actions statute of limitations issues, including injury, are at base factual inquiries. That established standard is reiterated or alluded to at least four times in *Budd* v. *Nixen, supra*, 6 Cal.3d at pages 198, 202, 203-204, from which the "actual injury" tolling provision of the statute derives. (*Laird* v. *Blacker* (1992) 2 Cal.4th 606, 612 [7 Cal.Rptr.2d 550, 828 P.2d 691].) Had the Legislature meant to significantly modify the law, it surely would have made that intention explicit.

The myriad of circumstances under which statute of limitations issues may arise in missed statute cases sharply illustrates the practicality of applying the prevailing "question-of-fact" rule to the determination of when actual injury occurs. The number of potential variables, which do not necessarily

---

[1]All further statutory references are to the Code of Civil Procedure.

Section 340.6(a)(1) provides: "An action against an attorney for a wrongful act or omission, other than for actual fraud, arising in the performance of professional services shall be commenced within one year after the plaintiff discovers, or through the use of reasonable diligence should have discovered, the facts constituting the wrongful act or omission, or four years from the date of the wrongful act or omission, whichever occurs first. In no event shall the time for commencement of legal action exceed four years except that the period shall be tolled during the time that any of the following exist: [¶] (1) The plaintiff has not sustained actual injury . . . ."

follow a set pattern, precludes defining the point of harm as a fixed point or event because reasonable application becomes too problematic. (See *post*, fn. 4, p. 591.) The issue may be resolved "as a matter of law" only if the *facts* are undisputed. (*Budd* v. *Nixen, supra*, 6 Cal.3d at p. 202.)

Although affirming this central precept, the task remains nevertheless to give some contours to the pertinent inquiry to provide guidance to the trier of fact or the trial court on summary judgment if the parties agree on the material facts. To this end, *Budd* v. *Nixen, supra*, 6 Cal.3d 195, provides considerable insight.[2] ■ To begin with, as the court reiterated in *Laird* v. *Blacker, supra*, 2 Cal.4th at page 625, the *fact* of damage rather than the *amount* is the relevant consideration. (See *Budd* v. *Nixen, supra*, 6 Cal.3d at p. 201.) In addition, the character or quality of the injury must be manifest and palpable. "The mere breach of a professional duty, causing only nominal damages, speculative harm, or the threat of future harm—not yet realized— does not suffice . . . ." (*Id.* at p. 200; see also *Davies* v. *Krasna* (1975) 14 Cal.3d 502, 513-514 [121 Cal.Rptr. 705, 535 P.2d 1161, 79 A.L.R.3d 807]; *Walker* v. *Pacific Indemnity Co.* (1960) 183 Cal.App.2d 513, 517-518 [6 Cal.Rptr. 924].)

■ In the "classic" missed statute situation, in which the attorney negligently fails to file the underlying lawsuit within the applicable statutory period and does nothing further, the plaintiff suffers actual harm at the time the statutory period lapses because, assuming the claim was otherwise viable, the right and/or remedy of recovery on the action has been substantially impaired.[3] (See, e.g., *Finlayson* v. *Sanbrook, supra*, 10 Cal.App.4th at p. 1442; *Davies* v. *Krasna, supra*, 14 Cal.3d at p. 514 [defendant's breach of confidence " 'substantially destroyed marketability' " of plaintiff's story causing "actual harm" within the meaning of *Budd*]; *Basinger* v. *Sullivan*

---

[2]The instructional value of the court's discussion in *Budd* has some limitations in that prior to the enactment of section 340.6 the running of the statute of limitations coincided with accrual of the plaintiff's malpractice cause of action, including damages. (See *Budd* v. *Nixen, supra*, 6 Cal.3d pp. 200-201, 202; see also *United States* v. *Gutterman* (9th Cir. 1983) 701 F.2d 104, 105-107.) By contrast, under the provisions of section 340.6, discovery of the negligent act or omission initiates the statutory period, and the absence of injury or damages serves as a tolling factor.

[3]Generally, "the running of the statutory period does not extinguish the cause of action, but merely bars the remedy. . . . [Citations.]" (*Western Coal & Mining Co.* v. *Jones* (1946) 27 Cal.2d 819, 828 [167 P.2d 719, 164 A.L.R. 685].) This principle is not without qualification, however: "The general rule governs unless the action is created by statute and the language of definition requires a construction that the cause of action is destroyed by the lapse of the period of limitations provided by the statute. Under that exception to the rule the expiration of the time within which suit must be brought operates to terminate the obligation as well as to bar the remedy. [Citation.]" (*Penn. R. R. Co.* v. *Midstate, etc., Co.* (1942) 21 Cal.2d 243, 247 [131 P.2d 544], revd. on other grounds *sub nom. Midstate Co.* v. *Penna. R. Co.* (1943) 320 U.S. 356 [88 L.Ed. 96, 64 S.Ct. 128].)

(Ind.Ct.App. 1989) 540 N.E.2d 91, cited with approval in *Laird* v. *Blacker*, *supra*, 2 Cal.4th at p. 629; see also Rest.2d Torts, § 7, subd. (1), p. 12 [defining "injury" as "the invasion of any legally protected interest of another"]; cf. *Walker* v. *Pacific Indemnity Co.*, *supra*, 183 Cal.App.2d at p. 517; *Campbell* v. *Magana* (1960) 184 Cal.App.2d 751, 758 [8 Cal.Rptr. 32].) Despite uncertainty of amount or difficulty of proof (see, e.g., *Benard* v. *Walkup* (1969) 272 Cal.App.2d 595, 605-606 [77 Cal.Rptr. 544]), the fact of harm would not be speculative or inchoate. (See § 312 [expressly precluding commencement of any civil action except within "the periods prescribed"]; cf. *Sheldon Appel Co.* v. *Albert & Oliker* (1989) 47 Cal.3d 863, 873-874 [254 Cal.Rptr. 336, 765 P.2d 498] [discussing sanctions for filing of frivolous lawsuits]; *Marshall* v. *Packard-Bell Co.* (1951) 106 Cal.App.2d 770, 774 [236 P.2d 201].) Moreover, the loss or diminution of a right or remedy is well recognized as constituting injury or damage. (See *Hensley* v. *Caietti* (1993) 13 Cal.App.4th 1165, 1175 [16 Cal.Rptr.2d 837]; *Sirott* v. *Latts* (1992) 6 Cal.App.4th 923, 929 [8 Cal.Rptr.2d 206]; *Ruchti* v. *Goldfein* (1991) 113 Cal.App.3d 928, 935 [170 Cal.Rptr. 375]; *Jensen* v. *Sprigg* (1927) 84 Cal.App. 519, 525 [258 P. 683], disapproved on another point in *Neel* v. *Magana, Olney, Levy, Cathcart & Gelfand* (1971) 6 Cal.3d 176, 190, fn. 29 [98 Cal.Rptr. 837, 491 P.2d 421]; see also *Basinger* v. *Sullivan*, *supra*, 540 N.E.2d at p. 94; *Woodburn* v. *Turley* (5th Cir. 1980) 625 F.2d 589, 592 [applying Texas law]; cf. *Rand* v. *Bossen* (1945) 27 Cal.2d 61, 65 [162 P.2d 457]; *United States* v. *Gutterman*, *supra*, 701 F.2d at p. 104 [applying *Budd*, actual injury arose and " 'the damage was done' " when attorney's negligence caused plaintiff to incur liability for payment of taxes at unfavorable rate].)

In other circumstances, the actual loss of the underlying remedy may remain contingent, that is, the attorney's negligence may have created only the potential for future harm. (Cf. *Heyer* v. *Flaig* (1969) 70 Cal.2d 223 [74 Cal.Rptr. 225, 449 P.2d 161], overruled on other grounds in *Laird* v. *Blacker*, *supra*, 2 Cal.4th at p. 617 [beneficiary's actionable injury for negligence in drawing of will did not arise until testator's death because no recognized legal rights under will until that time]; *Horne* v. *Peckham* (1979) 97 Cal.App.3d 404, 417 [158 Cal.Rptr. 714] [negligent preparation of trust documents did not cause "actual and true damage . . . until the trust was challenged and plaintiffs were forced to pay legal fees to defend" them]; *Fazio* v. *Hayhurst* (1966) 247 Cal.App.2d 200, 203 [55 Cal.Rptr. 370], disapproved on another point in *Neel* v. *Magana, Olney, Levy, Cathcart & Gelfand*, *supra*, 6 Cal.3d at p. 190, fn. 29 [since widow's election was revocable, no "actual damage" from negligent advice until election was acted upon].) Notwithstanding apparent expiration of the statutory period, questions of waiver, estoppel, or even the applicable limitations period may

raise factual issues concerning when the attorney's negligence caused definite and certain injury or more than nominal or insubstantial damages. (See, e.g., *Budd* v. *Nixen*, *supra*, 6 Cal.3d at pp. 201-202; *Benard* v. *Walkup*, *supra*, 272 Cal.App.2d at p. 601 [issue whether two- or four-year statute applied in case of contingency fee agreement]; see also *McCann* v. *Welden*, *supra*, 153 Cal.App.3d 814; cf. *Walker* v. *Pacific Indemnity Co.*, *supra*, 183 Cal.App.2d at pp. 517-519.)

Consistent with the rule and rationale we articulate, it is important to note that in these latter situations of contingent or speculative harm, the determination of actual injury does not necessarily depend upon or require some form of final adjudication, as by judgment or settlement.[4] " '[A]n injury does not disappear or become suspended because a more final adjudication of the result is sought.' [Citation.]" (*Laird* v. *Blacker*, *supra*, 2 Cal.4th at p. 615.) In addition, as the court explained in *Budd*, "the facts may demonstrate that plaintiff suffered damage when . . . compelled to 'incur and pay attorney's fees and legal costs and expenditures' " as the result of the malpractice.[5] (*Budd* v. *Nixen*, *supra*, 6 Cal.3d at pp. 201.) It would be for the trier of fact to determine when the requisite harm actually did occur as a consequence of the attorney's negligence. (See *Miller* v. *Bean* (1948) 87 Cal.App.2d 186, 189 [196 P.2d 596]; cf. *Oakes* v. *McCarthy Co.*, *supra*, 267 Cal.App.2d at p.

[4]Conditioning a finding of harm on such a consideration would conflict with the rationale of *Laird* v. *Blacker*, *supra*, 2 Cal.4th 606, in that it tends to resurrect the rejected notion of irremediability as the focus of actual injury. (*Id.* at pp. 615-617.) In *Laird*, the harm occurred *no later than* the loss of the underlying action, i.e., order of dismissal and entry of adverse judgment, due to the attorney's negligence during the course of litigation. (See *id.* at pp. 612-615.) The court did not address the question of whether it could have arisen earlier. (See *Hensley* v. *Caietti*, *supra*, 13 Cal.App.4th at p. 1174.)

For this reason, we question the reasoning, if not the result, in *Pleasant* v. *Celli* (1993) 18 Cal.App.4th 841, 848 [22 Cal.Rptr.2d 663], in which the Court of Appeal discerned a "bright line rule formulated by the Supreme Court in *Laird*" and rejected the analysis in *Finlayson* v. *Sanbrook*, *supra*, 10 Cal.App.4th 1436, 1442, which found actual injury upon expiration of the underlying statute. (*Pleasant* v. *Celli*, *supra*, 18 Cal.App.4th at pp. 848-850.) The court in *Finlayson* correctly recognized the principles articulated *Laird* did not demark adverse judgment as the categorical point of actual injury for all attorney malpractice actions. (*Finlayson* v. *Sanbrook*, *supra*, 10 Cal.App.4th at p. 1444.) Its rationale does imply, however, that a different "bright line rule" applies in these cases, i.e., when the underlying statute is missed. (*Ibid.*) To the extent the courts in both *Pleasant* and *Finlayson* failed to apply a factual analysis consistent with the principles articulated herein, their reasoning is disapproved.

[5]Although expenditure of attorney fees or other costs in many instances clearly would be *sufficient* to constitute the requisite injury, nothing in the history of section 340.6(a)(1) or its decisional predicates suggests it is *necessary*. In some circumstances, the loss or substantial impairment of a right or remedy itself may constitute actual injury and may well precede quantifiable financial costs. (See, e.g., *Fazio* v. *Hayhurst*, *supra*, 247 Cal.App.2d at p. 203 [no evidence plaintiff incurred any expenses as consequence of attorney's negligent advice on widow's election prior to time plaintiff was harmed by finality of election]; cf. *Laird* v. *Blacker*, *supra*, 2 Cal.4th at p. 614 ["We disagree with plaintiff that actual injury should be defined in terms of monetary amount . . . ."].)

255.) Of course, if the facts are undisputed, the trial court can resolve the question as a matter of law in accordance with the general principles governing summary judgment. (*Budd* v. *Nixen, supra,* 6 Cal.3d at p. 202; see, e.g., *McCann* v. *Welden, supra,* 153 Cal.App.3d at p. 824, fn. 13; *Yandell* v. *Baker* (1968) 258 Cal.App.2d 308, 311-312 [65 Cal.Rptr. 606], disapproved on another point in *Neel* v. *Magana, Olney, Levy, Cathcart & Gelfand, supra,* 6 Cal.3d at p. 190, fn. 29; see generally, *Molko* v. *Holy Spirit Assn.* (1988) 46 Cal.3d 1092, 1107 [252 Cal.Rptr. 122, 762 P.2d 46].)

A final passage from *Budd* v. *Nixen, supra,* 6 Cal.3d at page 201, may also inform the actual injury inquiry: "Ordinarily, the client has already suffered damage when he discovers his attorney's negligence, as occurred in *Neel* v. *Magana, Olney, Levy, Cathcart & Gelfand,* [*supra,* 6 Cal.3d at pp.] 183-187 . . . . In other cases, the infliction of the damage will alert the client to the attorney's negligence and thus the statute of limitations will then begin to run on any malpractice action. Only in the unusual case will the client discover his attorney's negligence without having suffered any consequential damage." In missed statute cases, the first observation will probably characterize the majority of circumstances. Nevertheless, given the number of variables potentially affecting the actual injury equation, the "unusual case" may routinely present itself as well.

Retaining the question of actual injury as a factual inquiry in missed statute cases also serves reasonably to accommodate the conflicting policy considerations implicated. Although sometimes characterized as a "technical defense" allowing a defendant "to obtain an unconscionable advantage and enforce a forfeiture" (*Bollinger* v. *National Fire Ins. Co.* (1944) 25 Cal.2d 399, 411 [154 P.2d 399]), statutes of repose are in fact favored in the law, "designed to promote justice by preventing surprises through the revival of claims that have been allowed to slumber until evidence has been lost, memories have faded, and witnesses have disappeared. The theory is that even if one has a just claim it is unjust not to put the adversary on notice to defend within the period of limitation and that the right to be free of stale claims in time comes to prevail over the right to prosecute them." (*Telegraphers* v. *Ry. Express Agency* (1944) 321 U.S. 342, 348-349 [88 L.Ed. 788, 792, 64 S.Ct. 582, 586].) Since plaintiffs are also protected by the discovery and continuing representation provisions of section 340.6, it does not seem unfair to allow for actual injury to arise at some point short of an adverse judgment or settlement, and as early as the time when the underlying statute of limitations expired, depending upon the facts.

As to concerns for the premature filing of legal malpractice claims and the risk of inconsistent pleadings or judgments, they can be readily overcome

under existing law. Statutory provisions permit consolidation or coordination of related actions. (§§ 404, 1048, subd. (a); see also Cal. Rules of Court, rule 1501 et seq.) Alternatively, trial courts have inherent authority to stay malpractice suits, holding them in abeyance pending resolution of underlying litigation. (Cf. *Montrose Chemical Corp.* v. *Superior Court* (1993) 6 Cal.4th 287, 310 [24 Cal.Rptr.2d 467, 861 P.2d 1153] [stay of declaratory relief action pending outcome of third party suit]; *Haskel, Inc.* v. *Superior Court* (1995) 33 Cal.App.4th 963, 978-980 [39 Cal.Rptr.2d 520] [in insurer's declaratory relief action, stay of discovery logically related to underlying action against insured]; *Rosenthal* v. *Wilner* (1988) 197 Cal.App.3d 1327 [243 Cal.Rptr. 472] [malpractice action stayed pending appeal of underlying suit].) Moreover, a party may plead in the alternative and may make inconsistent allegations. (See, e.g., *Crowley* v. *Katleman* (1994) 8 Cal.4th 666, 690-691 [34 Cal.Rptr.2d 386, 881 P.2d 1083]; *Rader Co.* v. *Stone* (1986) 178 Cal.App.3d 10, 29 [223 Cal.Rptr. 806]; *Skelly* v. *Richman* (1970) 10 Cal.App.3d 844, 856 [89 Cal.Rptr. 556]; 4 Witkin, Cal. Procedure (3d ed. 1985) Pleading, §§ 356-358, pp. 411-414.)

■ Turning to the disposition of this case: the trial court sustained defendant's demurrer, citing *Finlayson* v. *Sanbrook, supra,* 10 Cal.App.4th 1436, and thus found plaintiff's malpractice action time-barred as a legal question rather than as a matter of law on undisputed facts. Although for a different reason, the Court of Appeal reached the same result without consideration of any factual record. Both determinations were inconsistent with the rule we reaffirm that actual injury is generally a question of fact. On remand, the matter should be reconsidered and resolved on that basis. Although at least two possibilities are suggested on plaintiff's pleadings short of the adverse settlement, i.e., when the underlying statutory period expired and when plaintiff first had to oppose the limitations defense, the facts may reveal other possibilities including the settlement. If the parties agree on the sequence of events and any other material matters, the court may then determine on summary judgment the point at which the fact of damage became palpable and definite even if the amount remained uncertain, taking into consideration all relevant circumstances. (Cf. *Budd* v. *Nixen, supra,* 6 Cal.3d at pp. 203-204.)

### Disposition

The judgment of the Court of Appeal is reversed with directions to remand to the trial court for further proceedings consistent with this opinion.

Baxter, J., and Werdegar, J., concurred.

**KENNARD, J.,** Concurring.— ■■ The issue here is how to determine the point in time at which a plaintiff has suffered "actual injury" from

professional malpractice for purposes of applying a statute of limitations under which the limitations period does not commence until the plaintiff has sustained actual injury. This is the third time in the past two years that the court has addressed this question. (See *International Engine Parts, Inc. v. Feddersen & Co.* (1995) 9 Cal.4th 606 [38 Cal.Rptr.2d 150, 888 P.2d 1279]; *ITT Small Business Finance Corp. v. Niles* (1994) 9 Cal.4th 245 [36 Cal.Rptr.2d 552, 885 P.2d 965].) In the two previous cases, a majority of the court attempted to formulate "bright line" rules to define the circumstances under which a plaintiff had suffered actual injury. I dissented in each case (*ITT Small Business Finance Corp. v. Niles, supra,* at p. 258 (dis. opn. of Kennard, J.); *International Engine Parts, Inc. v. Feddersen & Co., supra,* at p. 623 (conc. & dis. opn. of Kennard, J.)), pointing out that the "bright lines" the majority was attempting to draw were ultimately impractical and that the question of when a plaintiff has suffered actual injury is necessarily a question of fact to be decided on a case-by-case basis.

Today, a majority of the court recognizes that the actual injury determination is a question of fact. I concur fully in this conclusion and in the judgment. I write separately to emphasize that this court's decision in *Budd v. Nixen* (1971) 6 Cal.3d 195 [98 Cal.Rptr. 849, 491 P.2d 433] provides the proper analytical framework for making the "actual injury" determination in all attorney malpractice cases, and also to clarify one point (the significance of the expiration of a limitations period on a third party claim) on which I find the lead opinion's discussion somewhat confusing.

I

By statute, an action against an attorney for professional malpractice must be commenced within one year after the plaintiff knew or should have known of the attorney's wrongful act or omission, or within four years after the date of the act or omission, whichever occurs first. (Code Civ. Proc., § 340.6, subd. (a).) The statute further provides, however, that the time to commence the attorney malpractice action is tolled during the period in which the "plaintiff has not sustained *actual injury.*" (*Id.,* § 340.6, subd. (a)(1), italics added.) At issue in this case, and in two other cases that have recently come before this court (*Laird v. Blacker* (1992) 2 Cal.4th 606 [7 Cal.Rptr.2d 550, 828 P.2d 691]; *ITT Small Business Finance Corp. v. Niles, supra,* 9 Cal.4th 245), is the meaning of the term "actual injury" as used in this statute.

When the Legislature enacted the statute of limitations for attorney malpractice actions (Code Civ. Proc., § 340.6), it codified this court's decisions in *Neel v. Magana, Olney, Levy, Cathcart & Gelfand* (1971) 6 Cal.3d 176 [98

Cal.Rptr. 837, 491 P.2d 421] [holding that the limitations period for an attorney malpractice claim does not begin to run until the plaintiff knew or should have known of the attorney's wrongful act or omission] and *Budd* v. *Nixen, supra,* 6 Cal.3d 195 [holding that the limitations period for an attorney malpractice claim does not begin to run until the plaintiff has suffered appreciable and actual harm]. (*Laird* v. *Blacker, supra,* 2 Cal.4th 606, 611.) For this reason, the decision in *Budd* v. *Nixen* is the controlling authority on the meaning of "actual injury" in this context. (See *ITT Small Business Finance Corp.* v. *Niles, supra,* 9 Cal.4th 245, 259 (dis. opn. of Kennard, J.).)[1]

Justice Arabian's lead opinion reaffirms four propositions taken directly from the language and reasoning of *Budd* v. *Nixen, supra,* 6 Cal.3d 195:

(1)  Determining when a plaintiff in a legal malpractice case has sustained actual injury is predominantly a factual rather than a legal determination. (Lead opn., *ante,* at pp. 585-586; *Budd* v. *Nixen, supra,* 6 Cal.3d at p. 202.)

(2)  The determination of actual injury does not depend upon or require a prior adjudication, judgment, or settlement. (Lead opn., *ante,* at pp. 591-592; *Budd* v. *Nixen, supra,* 6 Cal.3d at pp. 197-204.)

(3)  An injury is not "actual" if it causes only nominal damages, speculative harm, or the threat of future harm. (Lead opn., *ante,* at p. 589; *Budd* v. *Nixen, supra,* 6 Cal.3d at p. 200.)

(4)  It is the fact of injury and not the amount of injury that is the relevant consideration. (Lead opn., *ante,* at p. 589; *Budd* v. *Nixen, supra,* 6 Cal.3d at p. 201.)

The first two propositions—that the "actual injury" determination is predominantly factual and that it does not necessarily depend upon the timing or outcome of a prior adjudication, judgment, or settlement with a third party—formed the basis of my dissenting opinions in *ITT Small Business Finance*

---

[1]When it codified the decision in *Budd* v. *Nixen, supra,* 6 Cal.3d 195, the Legislature provided that the one-year and four-year limitations periods would be tolled until the attorney's malpractice had resulted in "actual injury." In *Budd,* however, this court made no reference to tolling, instead treating the occurrence of "actual and appreciable harm" simply as an element necessary to the accrual of the cause of action for attorney malpractice, and thus necessary also to the commencement of the limitations period. The lead opinion asserts that this difference in approach limits the "instructional value" of *Budd* v. *Nixen.* (Lead opn., *ante,* at p. 589, fn. 2.) I disagree. So far as I can discern, the difference in approach has no practical significance. There is no reason in law or logic why it should limit the value or authority of this court's decision in *Budd* v. *Nixen* in construing the statute that codifies it.

*Corp.* v. *Niles, supra,* 9 Cal.4th 245, 258 (dis. opn. of Kennard, J.) and in *International Engine Parts, Inc.* v. *Feddersen & Co., supra,* 9 Cal.4th 606, 623 (conc. & dis. opn. of Kennard, J.). My concurrence provides the fourth vote to form the majority in this case, thereby giving these propositions, once again, the force of law. (See Cal. Const., art. VI, § 2.)

Another theme of my dissents was that the factual issues posed by the "actual injury" determination may not be eliminated or converted into legal issues by the promulgation of "bright line" rules, a proposition that the lead opinion also accepts. (Lead opn., *ante,* at p. 591, fn. 4.)

The lead opinion affirms two additional propositions that are relevant in determining when "actual injury" occurs in so-called "missed statute" cases—that is, cases in which a client claims that his or her attorney committed malpractice either by failing to commence an action for the client against a third party within the time required by the applicable statute of limitations or by misadvising the client about that requirement. The lead opinion affirms that in these "missed statute" cases (1) actual injury is not established by the mere expiration of the limitations period on the client's claim against the third party (lead opn., *ante,* at p. 591, fn. 4), and (2) determining actual injury may require resolution of factual issues such as which limitation period applies to the third party claim and whether the third party waived or would be estopped to assert a defense based on expiration of the limitations period (*id.* at p. 591). I agree with both of these propositions, which are also, by my concurrence, given the force of law. As I explain, however, I find the lead opinion confusing in its discussion of their application in "missed statute" cases.

## II

The lead opinion recognizes, correctly, that in the "missed statute" cases "actual injury" is not established by the mere expiration of the limitations period on the client's claim against the third party. But it does so only in a footnote (lead opn., *ante,* at p. 591, fn. 4), and only by disapproving *Finlayson* v. *Sanbrook* (1992) 10 Cal.App.4th 1436 [13 Cal.Rptr.2d 406] to the extent it implies the· "bright line" rule that in "missed statute" cases, "actual injury" occurs upon expiration of the limitations period for the third party claim. Elsewhere, the lead opinion might be read as suggesting that expiration of the limitations period for the third party claim, without more, could constitute "actual injury." (Lead opn., *ante,* at pp. 589-590, 593.) I concur in the lead opinion only with the understanding that it does not in fact conclude or hold that the mere expiration of a conventional limitations period constitutes "actual injury."

As this court recognized in *Budd* v. *Nixen, supra,* 6 Cal.3d 195, 200, a negligent act by an attorney is not actionable if it results only in speculative harm or the possibility of future harm. In the "missed statute" cases, the harms most often at issue are the loss of the client's claim against the third party and increased legal expenses incurred to determine the effect of the missed statute or to enforce or attempt to enforce the third party claim. But the mere expiration of the limitations period on the third party claim does not extinguish that claim. Although the expiration of the limitations period may result in increased litigation costs, those costs become "actual injury" only when they are incurred. These points deserve some elaboration.

Because in civil actions the statute of limitations is a law of procedure, it affects only the remedy, not the substantive right or obligation. (*Nelson* v. *Flintkote Co.* (1985) 172 Cal.App.3d 727, 733 [218 Cal.Rptr. 562]; 3 Witkin, Cal. Procedure (3d ed. 1985) Actions, § 308, p. 337; *id.,* § 314, p. 345.) In other words, a cause of action is not extinguished or impaired by the mere passage of time, and the maintenance of the claim is not precluded simply by the running of the statutory period. (*Nelson* v. *Flintkote Co., supra,* at pp. 731-732.) The statute of limitations is an affirmative defense that is forfeited if not appropriately invoked by the defendant. (See, e.g., *Minton* v. *Cavaney* (1961) 56 Cal.2d 576, 581 [15 Cal.Rptr. 641, 364 P.2d 473]; 5 Witkin, *op. cit. supra,* Pleading, § 1039, pp. 453-455.) Thus, unless the defendant properly invokes the statute of limitations as a defense, the expiration of the statutory period does not affect even the remedy. Because the expiration of a limitations period by itself does not extinguish a claimant's right or bar the remedy, it cannot constitute "actual injury" to the claimant.

As the lead opinion correctly recognizes (lead opn., *ante,* at p. 589), "actual injury" may consist of an impairment or diminution, as well as the total loss or extinction, of a right or remedy. (E.g., *Davies* v. *Krasna* (1975) 14 Cal.3d 502 [121 Cal.Rptr. 705, 535 P.2d 1161, 79 A.L.R.3d 807] [disclosure destroyed marketability of story]; *Hensley* v. *Caietti* (1993) 13 Cal.App.4th 1165 [16 Cal.Rptr.2d 837] [legal relations and rights altered and obligation created by contract]; *Sirott* v. *Latts* (1992) 6 Cal.App.4th 923 [8 Cal.Rptr.2d 206] [judgment resulting in irreversible loss of right to insurance]; *Ruchti* v. *Goldfein* (1980) 113 Cal.App.3d 928 [170 Cal.Rptr. 375] [judgment terminating pension rights]; *Walker* v. *Pacific Indemnity Co.* (1960) 183 Cal.App.2d 513 [6 Cal.Rptr. 924] [judgment in excess of insurance coverage]; *Jensen* v. *Sprigg* (1927) 84 Cal.App. 519 [258 P. 683] [claim discharged in bankruptcy]; *United States* v. *Gutterman* (9th Cir. 1983) 701 F.2d 104 [tax penalty assessment].) But each of these cases involved a present and unconditional impairment, diminution, or loss of a legal right or interest. In contrast, expiration of a limitation period results in no present

impairment of the claim, but only the threat of future loss contingent on another party's willingness and ability to assert the statute of limitations as a defense.

To be sure, some rights are expressly conditioned on their assertion within a specified period of time, and these rights may indeed be extinguished by failure to assert them within the allowed time. (See *Williams* v. *Pacific Mutual Life Ins. Co.* (1986) 186 Cal.App.3d 941, 949 [231 Cal.Rptr. 234]; 3 Witkin, *op. cit. supra*, Actions, § 315, p. 345.) But ordinary civil statutes of limitation do not operate in this manner, and that is all we are concerned with here.

The lead opinion refers to *Basinger* v. *Sullivan* (Ind.Ct.App. 1989) 540 N.E.2d 91 and to *Woodburn* v. *Turley* (5th Cir. 1980) 625 F.2d 589. (Lead opn., *ante,* at pp. 589, 590.) But neither case involves California law or our principle of "actual injury." Equally unhelpful for present purposes are the lead opinion's references to *Campbell* v. *Magana* (1960) 184 Cal.App.2d 751 [8 Cal.Rptr. 32] (concluding that the "loss" of the "nuisance value" of an unmeritorious lawsuit was not damage) and *Marshall* v. *Packard-Bell Co.* (1951) 106 Cal.App.2d 770 [236 P.2d 201] (holding that an allegation of duress did not toll a statute of limitations).

The lead opinion also observes that the Restatement Second of Torts, in section 7, subdivision (1), defines "injury" as the invasion of any legally protected interest. (Lead opn, *ante,* at pp. 589-590.) But the lead opinion neglects to mention that, in subdivision (2) of the same section, the Restatement defines "harm" as loss or detriment *in fact.* A comment to the section observes that the difference between "injury" and "harm" under the Restatement is the difference between a legal wrong (which may cause no physical or monetary detriment) and actual damage. (Rest.2d Torts, § 7, com. a, p. 13.) Thus, "actual injury" as used in our attorney malpractice statute of limitations is more akin to "harm" than to "injury" as those terms are defined in the Restatement.

In the "missed statute" cases, therefore, expiration of the statute of limitations, without more, does not constitute "actual harm." This does not mean, however, that a client cannot bring a malpractice action against an attorney for a "missed statute" unless and until the third party has successfully asserted a defense based on the statute of limitations. It does mean, however, that if the client did not file suit on the third party claim, the "actual injury" determination may require resolution of factual issues such as whether filing suit against the third party would have been futile or otherwise imprudent and, if so, when that futility became established; and

whether the client incurred any attorney fees or other expenses to determine the futility of pursuing the third party action and, if so, when the expenses were incurred. In determining whether pursuing the third party claim would have been futile or imprudent, factual issues that may arise include which statute of limitations applied to the third party claim, whether the third party may have waived a defense based on the statute of limitations, and whether the third party was or may have been estopped to assert a defense based on the statute of limitations. Determination of issues of waiver and estoppel often depend upon the resolution of factual questions. (*Platt Pacific, Inc.* v. *Andelson* (1993) 6 Cal.4th 307, 319 [24 Cal.Rptr.2d 597, 862 P.2d 158].) And which statute of limitations applies in a case may well turn on resolution of such factual issues as whether the obligation was founded upon an instrument in writing. (*Benard* v. *Walkup* (1969) 272 Cal.App.2d 595, 600-603 [77 Cal.Rptr. 544].)

CONCLUSION

As I have long maintained, in construing the term "actual injury" in the attorney malpractice statute of limitations (Code Civ. Proc., § 340.6), there is no better guide than this court's opinion in *Budd* v. *Nixen, supra,* 6 Cal.3d 195, which teaches that determining the point of actual injury requires a close analysis of the facts of the particular case and is not amenable to resolution by simplistic "bright line" rules. A majority of this court now adopts this view and applies it to the "missed statute" category of attorney malpractice actions. Accordingly, I concur in the lead opinion, although with the understanding that in a "missed statute" case the mere expiration of a conventional limitations period is not actual injury.

**LUCAS, C. J.**—I dissent.

We granted review of this case in order to decide when plaintiff suffered "actual injury" within the meaning of Code of Civil Procedure section 340.6, subdivision (a)(1), for purposes of tolling the limitations period applicable to her legal malpractice action. Concerned with the "numerous variables" arising in the unique context of missed-statute malpractice cases, the lead opinion has declined to resolve the question presented, opting instead to remand the case to the trial court for resolution of the "actual injury" issue as a question of fact in every missed-statute case. In so doing, the lead opinion disserves both the courts and missed-statute malpractice litigants by perpetuating uncertainty and guaranteeing that each case will lead to prolonged and costly litigation. In my view, the court should follow the guidance of its own recent precedent and provide a clear rule for the bench and bar by

deciding when "actual injury" occurred in this case. In this regard, I believe that important policy considerations are best served by a rule recognizing that "actual injury" in missed-statute malpractice cases involving an underlying action occurs at the point of disposition of plaintiff's underlying lawsuit, whether by settlement, dismissal or adverse judgment.

The lead opinion avoids deciding when "actual injury" occurred in this case primarily on the basis of a statement in *Budd* v. *Nixen* (1971) 6 Cal.3d 195 [98 Cal.Rptr. 849, 491 P.2d 433] (hereafter *Budd*) that "the determination of the time when plaintiff suffered damage raises a question of fact." (*Id.* at p. 202.) Such reliance ignores the reasoning of *Budd*, and our seminal decision in *Laird* v. *Blacker* (1992) 2 Cal.4th 606 [7 Cal.Rptr.2d 550, 828 P.2d 691] (hereafter *Laird*), an opinion rendered after the Legislature codified the discovery and actual injury rule in Code of Civil Procedure section 340.6, now governing legal malpractice cases.

In *Laird,* we noted the suggestion in *Budd, supra,* 6 Cal.3d 195, that the time of commencement of the statute of limitations is often a question of fact for the jury. (*Laird, supra,* 2 Cal.4th at p. 611.) But we clearly viewed the proposition set forth in that case as consistent with—rather than a barrier to—our determination in *Laird* that "actual injury" occurred at adverse judgment rather than at the conclusion of an appeal of right. As we explained in *Laird*, the *Budd* court recognized that it would be unfair for a malpractice plaintiff to face a statute of limitations on the date he or she first incurs nominal damages. *Budd* thus concluded that the typical malpractice plaintiff suffers appreciable harm on entry of adverse judgment. (*Laird, supra,* 2 Cal.4th at p. 612; *Budd, supra,* 6 Cal.3d at pp. 200-201.) The *Budd* court held that the plaintiff's action accrued at least "on entry of [adverse] judgment because [the plaintiff] clearly then became obligated to pay a considerable sum to the broker or to post a bond on appeal." (6 Cal.3d at p. 202; see also *Neel* v. *Magana, Olney, Levy, Cathcart & Gelfand* (1971) 6 Cal.3d 176 [98 Cal.Rptr. 837, 491 P.2d 421] [approving *Hays* v. *Ewing* (1886) 70 Cal. 127 [11 P. 602], in which we accepted the date of dismissal of the suit—that is, the date upon which the client suffered damages—as the crucial point from which the statute of limitations should run].)

Because litigants had significant difficulty in reconciling *Budd*'s discussion of appreciable injury and the statute's "actual injury" tolling provision, we granted review in *Laird*. (Compare *Southland Mechnical Constructors Corp.* v. *Nixen* (1981) 119 Cal.App.3d 417, 434 [173 Cal.Rptr. 917] ["actual injury" occurs when plaintiff in underlying action incurs and pays attorney fees, legal costs and expenditures] with *Troche* v. *Daley* (1990) 217 Cal.App.3d 403, 410 [266 Cal.Rptr. 34] [statute commences when court

dismisses underlying lawsuit].) In *Laird*, we resolved the substantial disagreement in the Courts of Appeal over whether the statute of limitations in attorney malpractice actions is tolled until final judgment in the underlying action on which the malpractice action is based, or on the date the appeal of right is resolved. We held that "actual injury" occurs on entry of adverse judgment or final order of dismissal. (*Laird, supra,* 2 Cal.4th at p. 615.)

Neither *Budd* nor *Laird* addressed the limitations question in the context of a second, underlying action. In *ITT Small Business Finance Corp.* v. *Niles* (1994) 9 Cal.4th 245 [36 Cal.Rptr.2d 552, 885 P.2d 965] (hereafter *ITT*), we held that until bankruptcy litigation concerning the effectiveness of inadequately prepared loan documents is settled, the question whether the attorney committed malpractice in preparing those documents has not been resolved. (*ITT, supra,* 9 Cal.4th at pp. 257-258.) We followed the reasoning of *Budd*, and held that the limitations period in a professional malpractice action commences on discovery of the malpractice, but is tolled until the client suffers appreciable harm as a consequence of the negligence. We also followed *Laird*, which recognized that although a client may suffer harm or monetary damage prior to entry of adverse judgment, the cause of action for professional negligence does not arise until judgment is entered, because in order to prosecute a malpractice action, the former client, as plaintiff, must show both that there was a breach of the duty of care, and that the breach caused plaintiff's harm. (*Laird, supra,* 2 Cal.4th at p. 614.) In *ITT*, therefore, we employed the reasoning of *Budd* and *Laird* to hold that the question whether the client suffered "actual injury" as a result of the attorney's preparation of the loan documents is necessarily contingent on the outcome of the adversary proceeding. (*ITT, supra,* 9 Cal.4th at p. 258.) Therefore, the statute of limitations was tolled until the adversary proceeding was complete. (*Ibid.*)

Several Courts of Appeal have applied the reasoning of *Budd, Laird,* and *ITT* in recent cases, and have developed, for the first time, consistent results in limitations cases. (See *Baltins* v. *James* (1995) 36 Cal.App.4th 1193 [42 Cal.Rptr.2d 896] ["actual injury" occurred on the date of adverse judgment in a marital dissolution proceeding]; see also *Marshall* v. *Gibson, Dunn & Crutcher* (1995) 37 Cal.App.4th 1397 [44 Cal.Rptr.2d 339] [adverse arbitration decision]; *Karno* v. *Biddle* (1995) 36 Cal.App.4th 622 [42 Cal.Rptr.2d 318] [settlement of underlying action by tenants against malpractice plaintiffs]; *Radovich* v. *Locke-Paddon* (1995) 35 Cal.App.4th 946 [41 Cal.Rptr.2d 573] [declining to apply *ITT* to transactional malpractice action in which there was no underlying third party action].) The lead opinion's reasons for departing from our recent cases provide poor solace to plaintiffs who have already suffered at the hands of those entrusted to know the law.

Notwithstanding the clear guidelines set forth in the above cases, the lead opinion attempts to reconcile this court's determination of when "actual injury" occurred in *ITT* with its refusal to do so here by asserting that *ITT* did not articulate a "rule for all seasons." This understanding does not, however, justify a departure from the manner in which that case was decided. Indeed, we circumscribed our holding narrowly in *ITT* in order to allow for the possibility that, under cases not involving transactional malpractice, "actual injury" may be found to occur at some other point. The prospect that other facts might warrant a different rule does not, however, preclude us from applying the principles that guided us in *ITT* and cases it followed. If that is the lead opinion's message, it is clearly misguided.

In sum, our decisions and those of the Courts of Appeal construing the "actual injury" tolling provision of Code of Civil Procedure section 340.6, subdivision (a)(1) have consistently recognized the propriety and the desirability of making an express determination as to when the plaintiff suffered "actual injury" based on the facts presented. By refusing to undertake a similar task here, the lead opinion ignores fundamental principles of judicial decisionmaking under which those cases were resolved.

More serious than the lead opinion's departure from such principles, however, are the practical consequences of its holding. In the wake of its conclusion that the determination of when "actual injury" occurs in missed-statute malpractice cases is a question of fact, by what criteria will the trier of fact make the "actual injury" determination? The lead opinion has assertedly provided "some contours to the pertinent inquiry" (maj. opn., *ante*, p. 589) but the guidance it sets forth is illusory. For example, the lead opinion instructs that "the *fact* of damage rather than the *amount* is the relevant consideration." (*Ibid.*) How a factfinder is to apply this explication of its task to a particular set of facts is not readily apparent, however. Indeed, the notion of the "fact" versus the "amount" of damage has been relied on to justify opposite conclusions in missed-statute malpractice cases. (Compare *Finlayson* v. *Sanbrook* (1992) 10 Cal.App.4th 1436, 1444 [13 Cal.Rptr.2d 406] ["actual injury" occurred at expiration of limitations period on underlying claim] with *Pleasant* v. *Celli* (1993) 18 Cal.App.4th 841, 850 [22 Cal.Rptr.2d 663] ["actual injury" occurred at dismissal or adverse judgment].)

The lead opinion posits that in the "classic" missed-statute case (in which the client's attorney simply fails to file the underlying action), "actual injury" occurs at the expiration of the limitations period applicable to the underlying claim because, at that point, the client's right and/or remedy on the action has been impaired. The lead opinion explains further that in other

circumstances, the loss of the underlying action may remain contingent so that "actual injury" will be deemed to have occurred at some later point. Justice Kennard's concurring opinion further confounds the issue. Significantly, however, the lead opinion fails to provide the trier of fact with a clear basis on which to draw a distinction between these two scenarios. Its admonition that the injury "must be palpable" merely begs the question.

Moreover, the lead opinion's reference to decisions predating the enactment of Code of Civil Procedure section 340.6, and to cases that were expressly disapproved, or called into doubt, by *Laird*, offers questionable guidance on when the loss of a claim may be considered contingent and therefore outside the lead opinion's so-called "classic" missed-statute malpractice case. (See, e.g., lead opinion's reliance on *Heyer* v. *Flaig* (1969) 70 Cal.2d 223 [74 Cal.Rptr. 225, 449 P.2d 161], overruled in *Laird, supra*, 2 Cal.4th at p. 617; *McCann* v. *Welden* (1984) 153 Cal.App.3d 814, 824 [200 Cal.Rptr. 703] [relying on irremediability rule cases disapproved in *Laird, supra*, 2 Cal.4th at p. 617]; see also *Horne* v. *Peckham* (1979) 97 Cal.App.3d 404, 417 [158 Cal.Rptr. 714] [cited by lead opinion as example of contingent injury, but recently characterized as "discovery" rather than "actual injury" case in *ITT, supra*, 9 Cal.4th at p. 256].) In essence, the lead opinion's "question of fact" rule places the fact finder in the same position as that of perplexed Courts of Appeal prior to our granting review in this case.

The lead opinion's holding also contravenes our well-established policy that statutes of limitations be narrowly construed. Statutes of limitations "represent expedients, rather than principles. They are practical and pragmatic devices to spare the courts from litigation of stale claims, and the citizen from being put to his defense after memories have faded, witnesses have died or disappeared, and the evidence has been lost." (*Chase Securities Corp.* v. *Donaldson* (1945) 325 U.S. 304, 314 [89 L.Ed. 1628, 1635, 65 S.Ct. 1137].) For this reason, we consider " '[s]tatutorily imposed limitations on actions [to be] technical defenses which should be *strictly construed to avoid the forfeiture of a plaintiff's rights.*' " (*Steketee* v. *Lintz, Williams & Rothberg* (1985) 38 Cal.3d 46, 56 [210 Cal.Rptr. 781, 694 P.2d 1153], quoting *Sevilla* v. *Stearns-Roger, Inc.* (1980) 101 Cal.App.3d 608, 611 [161 Cal.Rptr. 700], italics added.) Because statutes of limitations serve as obstacles to what may be meritorious claims, " 'courts may not indulge in a strained construction to apply these statutes to the facts of a particular case.' " (*Ibid.*) Leaving to a trier of fact the determination of when "actual injury" occurs in missed-statute malpractice cases withdraws from this court the obligation to construe Code of Civil Procedure section 340.6 in a manner consistent with legislative intent and public policy, and will lead to haphazard application of limitations periods to the significant detriment of all litigants in the missed-statute malpractice context.

In my view, in a case such as that presented, when, during the course of a pending lawsuit, the client is made aware of alleged attorney error because the underlying defendant has raised a statute of limitations defense, our decisions in *Budd, Laird* and *ITT* make clear that it is illogical to require a client—in the midst of that litigation—simultaneously to file a legal malpractice action against the assertedly negligent attorney. Rather, the client should be permitted to litigate the statute of limitations claim in the underlying lawsuit in an attempt to prevail on that issue, thereby potentially eliminating, and at least minimizing, the damages that may have been caused by the attorney's negligence. In such a setting, consistent with the holdings in *Budd, Laird* and *ITT*, the better rule is that the client sustains "actual injury" within the meaning of Code of Civil Procedure section 340.6, subdivision (a)(1) when an adverse judgment, settlement or dismissal is entered in the underlying lawsuit.

As we observed in *ITT*, a rule allowing the client time to litigate and resolve the statute of limitations claim in the underlying action also serves the important purpose of conserving judicial resources (and presumably, malpractice premiums) by not requiring the filing of a potentially unnecessary malpractice action. (*ITT, supra*, 9 Cal.4th at pp. 248-249.) In addition, it avoids forcing a client to take inconsistent positions on the statute of limitations issue, simultaneously resisting the underlying defendant's challenge to the timeliness of that action while alleging in a legal malpractice action that her underlying action was time-barred due to attorney error. (*Ibid.*; see also *International Engine Parts, Inc.* v. *Feddersen & Co.* (1995) 9 Cal.4th 606, 622 [38 Cal.Rptr.2d 150, 888 P.2d 1279] [hereafter *IEP*] [statute of limitations in accountant malpractice action alleging negligent tax preparation commences at Internal Revenue Service's assessment of tax deficiency]; *Pleasant* v. *Celli, supra*, 18 Cal.App.4th at pp. 849-850 [admission in legal malpractice suit would have detrimental effect on contrary assertion in underlying medical malpractice action].) Although the lead opinion suggests that a request to stay the malpractice action, if granted, would alleviate the client's predicament in having to take inconsistent positions, such a solution does nothing to lessen the burden placed on the judiciary by requiring a malpractice plaintiff to file a potentially unnecessary malpractice action. Neither does the granting of a stay relieve the malpractice defendant from having to make a claim with his or her legal malpractice insurer that might not have been necessary had the client been permitted to litigate the statute of limitations claim in the underlying action before instituting the malpractice action.

The policy considerations underlying our decisions in *ITT* and *IEP* are equally applicable to the facts presented here. Indeed, the procedural history of plaintiff's underlying action illustrates the desirability of a rule permitting the client additional time, before instituting a malpractice action, to litigate the statute of limitations claim in the underlying lawsuit. Here, the estate filed a motion for summary judgment based on the statute of limitations. Plaintiff opposed the motion by arguing that the estate was estopped from asserting the defense because defendant, while representing the estate, made misrepresentations causing plaintiff to file her wrongful death action too late. The trial court denied the estate's motion, finding material questions of fact remained as to the issue of estoppel.

Had plaintiff filed her malpractice action prior to dismissal of her underlying action following settlement, she would have been forced to take inconsistent positions with regard to the statute of limitations issue: in the malpractice action, she would have argued that she was damaged by Aaron Paul's misadvice which resulted in the untimely filing of her wrongful death lawsuit, while in the underlying action itself, she maintained that the estate should be estopped from asserting the defense in the first place. Such a scenario not only results in a waste of judicial resources (*ITT, supra,* 9 Cal.4th at p. 257), but also creates the potential for inconsistent judgments.

For the reasons stated above, I would hold that in a legal malpractice action typified by the facts here—in which the client attempted to avoid dismissal of an underlying action on statute of limitations grounds by litigating the merits of the statutory defense—"actual injury" occurs at the time of disposition of the client's underlying lawsuit, whether by dismissal, settlement or entry of adverse judgment. Such a rule is consistent with *Laird, ITT,* and *IEP,* and the myriad Court of Appeal cases that have properly applied the reasoning of those decisions. Because the rule's parameters are clear, there is little room for its abuse.

In this case, plaintiff discovered defendant's allegedly negligent action in April 1990 when she opposed the estate's summary judgment motion. Under the rule I propose, the running of the one-year limitations period established by Code of Civil Procedure section 340.6, subdivision (a) was tolled, however, until October 21, 1991, when the lawsuit was dismissed following plaintiff's allegedly unfavorable settlement of her underlying action against the estate. Because plaintiff filed her legal malpractice action against defendant on October 1, 1992, her action would be timely filed. I would therefore reverse the decision of the Court of Appeal affirming the judgment of

dismissal against plaintiff, permitting plaintiff's malpractice action to proceed on the merits.

Accordingly, I dissent.

Mosk, J., and George, J., concurred.