Filed 10/7/15  Erwin v. Briggs CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| CHRISTOPHER ERWIN, | |
| Plaintiff and Appellant, | G050591 |
| v. | (Super. Ct. No. 30-2012-00574523) |
| STEVEN E. BRIGGS et al., | O P I N I O N |
| Defendants and Respondents. | |

Appeal from a judgment of the Superior Court of Orange County, John C. Gastelum, Judge.  Affirmed.

Beitchman & Zekian, David P. Beitchman, Irina Grushko and Shani Kochav for Plaintiff and Appellant.

Nemecek & Cole, Jonathan B. Cole, Mark Schaeffer and Michael W. Feenberg for Defendants and Respondents.

\*          \*          \*

Christopher Erwin sued attorney Steven E. Briggs and the Law Offices of Steven E. Briggs for legal malpractice. The alleged malpractice was Briggs's failure to obtain and file a stipulation regarding the ownership of a business in Erwin's divorce case. Briggs moved for summary judgment, arguing the expiration of the statute of limitations and lack of causation. The trial court agreed and granted summary judgment. We conclude the trial court was correct on both issues and therefore we affirm.

I

FACTS

Sometime prior to July 2008, Erwin and his wife, Tina, began divorce proceedings.[1] Around that time, Erwin, himself an attorney, retained Briggs to represent him. Among other issues, one of the assets Tina and Erwin were required to address in their divorce was a business known as ICE, LLC (ICE). ICE did business as Christopher Stevens, a beauty salon and spa in Anaheim. ICE had been acquired from Erwin's mother, Cheryl. As part of that transaction, Cheryl received a secured interest in ICE's assets.

In 2009, a dispute arose between Tina and Cheryl over salon operations, resulting in a lawsuit. Erwin was brought into the dispute as a cross-defendant. In January 2010, the lawsuit was settled between all parties. This agreement "was entered into outside of the family [law] matter, and outside of the jurisdiction of the Court presiding over the same." Pursuant to the agreement's terms, ICE was to be awarded to Erwin, who would be responsible for its operations and liabilities. Briggs advised Erwin to enter into a stipulated bifurcated judgment, with Tina reaffirming that ICE belonged to Erwin, so the issue of its ownership would not be relitigated in the divorce case.

---

[1] We refer to other members of the Erwin family by their first names to avoid confusion. No disrespect is intended. (*In re Marriage of Smith* (1990) 225 Cal.App.3d 469, 475-476, fn. 1.)

Briggs then drafted a stipulated bifurcated judgment and forwarded it to Tina's counsel for review and approval. Erwin, thereafter, claimed he believed the judgment had been signed and filed. He then terminated Briggs's services in June 2010.

At some point thereafter, Erwin listed ICE for sale and found a potential buyer. He negotiated a price and Erwin and the buyer entered into a purchase agreement in April 2011.

On June 2, 2011, Tina, having learned of the pending sale, sought a court order ex parte requiring that the proceeds of the sale be deposited into a trust account with her attorneys, pending further orders by the court or written agreement between the parties. She requested this order, she stated, because Erwin was in default on various obligations to her, and his conduct had required her to file orders to show cause to force him to pay child and spousal support. He had also threated to "burn down everything we own" to fight her in the divorce.

In the application, Tina stated: "I anticipate that Respondent will claim that I do not have an interest in the Salon and, therefore, am not entitled to any of the sale proceeds therefrom. It is true that Respondent and his mother sued me in civil court alleging mismanagement of the Salon. We entered into a Mutual Release document in which I assigned Respondent my interest in the Salon. [¶] However, the Court will note that I am not seeking the Salon proceeds to compensate me for my interest in the Salon. I am asking the Court to merely order that the proceeds be held in trust pending distribution by Court Order or agreement, because those proceeds are the last remaining liquid funds that I am aware of to pay me the one-half interest in our other community assets to which I am entitled." The court granted the application.

On June 6, Tina's counsel sent written notice of the order to the escrow company handling the sale. The letter stated: "Please note that, the attached Court Order is in no way intended to negatively affect the consummation of the sale of The Salon nor the close of escrow. In fact, the Court's Order does not take effect until the net sale

3

proceeds are deposited into escrow." Cheryl, ICE's secured creditor, however, advised Erwin she would not allow the sale to proceed, as any proceeds would be paid to the trust account rather than being immediately available for repayment of the loan. Erwin claimed that only after this point did he learn that the stipulation regarding the ownership of ICE had never been filed.

Erwin initially filed the instant suit on June 5, 2012. He filed his first amended complaint (the complaint) in November 2012, alleging professional negligence, specifically, that Briggs had failed to file the stipulated judgment stating Erwin was the sole owner of ICE. Defendants eventually filed a motion for summary judgment and supporting documents and evidence, arguing the one-year statute of limitations barred Erwin's claim as a matter of law, as Erwin had discovered the alleged facts giving rise to a cause of action more than one year before he filed suit. Defendants also argued that based on the undisputed facts, Erwin could not establish that Briggs's alleged conduct was the proximate cause of any damages.

In his opposition, Erwin claimed the statute of limitations had not run because the statute was tolled during the time he had not sustained actual injury and triable issues of fact existed on this point. Further, he argued he could establish proximate cause.

The trial court disagreed and granted the motion. Erwin now appeals.

II

DISCUSSION

A. *Standard of Review and Relevant Law*

"'On appeal after a motion for summary judgment has been granted, we review the record de novo, considering all the evidence set forth in the moving and opposition papers except that to which objections have been made and sustained. [Citation.]' [Citation.] A motion for summary judgment is properly granted 'if all the

4

papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.' [Citation.]" (*Biancalana v. T.D. Service Co.* (2013) 56 Cal.4th 807, 813; see also Code Civ. Proc.,[2] § 437c, subd. (c).)

"'"'"A defendant moving for summary judgment has the burden of producing evidence showing that one or more elements of the plaintiff's cause of action cannot be established, or that there is a complete defense to that cause of action. [Citations.] The burden then shifts to the plaintiff to produce specific facts showing a triable issue as to the cause of action or the defense. [Citations.] Despite the shifting burdens of production, the defendant, as the moving party, always bears the ultimate burden of persuasion as to whether summary judgment is warranted. [Citation.]" [Citation.]' [Citation.]" (*Multani v. Witkin & Neal* (2013) 215 Cal.App.4th 1428, 1443.)

"Appellate courts (1) take the facts from the record that was before the superior court when it ruled on the motion; (2) consider all the evidence set forth in the moving and opposing papers, unless the superior court sustained objections to that evidence; and (3) resolve doubts concerning the evidence in favor of the party opposing the motion. [Citation.]" (*Robinson v. City of Chowchilla* (2011) 202 Cal.App.4th 368, 374.)

B. *Statute of Limitations*

As noted above, the party moving for summary judgment has the "initial burden of production to make a prima facie showing of the nonexistence of any triable issue of material fact." (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850.) In order to make this determination, we review the law and evidence relevant to the cause of action.

---

[2] Subsequent statutory references are to the Code of Civil Procedure.

Pursuant to section 340.6, subdivision (a): "An action against an attorney for a wrongful act or omission . . . arising in the performance of professional services shall be commenced within one year after the plaintiff discovers, or through the use of reasonable diligence should have discovered, the facts constituting the wrongful act or omission, or four years from the date of the wrongful act or omission, whichever occurs first."

As Erwin admits, he discovered the stipulated judgment had not been filed on or about June 2, 2011. The instant case was filed on June 5, 2012. Erwin argues he did not suffer "actual damages" in the form of the lost sale of the salon until November 18, 2011. Therefore, he asserts the statute was tolled from June to November 2011, and he filed the case within the one-year statute of limitations.

Erwin is correct that unless the client's knowledge of the purported malpractice is accompanied by actual injury, the statute is tolled until such injury occurs. (*Adams v. Paul* (1995) 11 Cal.4th 583, 585-586 (*Adams*).) The wrongful act or omission must cause actual injury; the plaintiff's damages may not be contingent or speculative. (*Jordache Enterprises, Inc. v. Brobeck, Phleger & Harrison* (1998) 18 Cal.4th 739, 749-750 (*Jordache*).) Actual injury occurs when the plaintiff suffers any appreciable and actual damage as a result of the attorney's allegedly negligent act(s), including the "'impairment or diminution, as well as the total loss or extinction, of a right or remedy'" (*Village Nurseries v. Greenbaum* (2002) 101 Cal.App.4th 26, 41 (*Village Nurseries*)) because the "*fact* of damage rather than the *amount* is the relevant consideration." (*Adams, supra,* 11 Cal.4th at p. 589.) Therefore, if there is any injurious change to a plaintiff's rights or interests due to an attorney's negligent acts, the one-year statute of limitations begins to run. (*Jordache, supra,* 18 Cal.4th at p. 750.)

Generally, "'the determination of the time when plaintiff suffered damage raises a question of fact.' [Citation.] If the material facts are undisputed, the court may, however, resolve the issue of when the plaintiff suffered manifest and palpable injury as a

6

matter of law. [Citation.]" (*Adams, supra,* 11 Cal.4th at p. 586.) Erwin argues that he did not suffer injury when the ex parte order was entered, because the order assumed the sale would go forward.

But Erwin fails to address the evidence offered in defendants' motion for summary judgment, which included his own deposition testimony that he knew, after the June 2, 2011 ex parte hearing, that neither he nor his mother would receive any proceeds directly from the sale of the salon. He was asked if, after that hearing, he knew the buyers "were going to walk?" He testified: "I did, even though I hoped that wouldn't be the case and that my ex-wife would realize . . . . [¶] If she blows the sale up, she doesn't get anything, besides misery to me, which is why when I'm sitting there watching this whole process unfold, I'm thinking, well, do they really think that a third-party buyer on a small business in a difficult, competitive industry is going to proceed with buying this; and thereby, they're going to get money? It didn't make any sense."

The outcome of the hearing, as noted above, was the court's decision to grant the ex parte application directing the proceeds of the anticipated sale of the salon into Tina's attorneys' trust account. This very outcome – involving ICE funds in the divorce – was the situation the stipulation was designed to avoid. On the date of the hearing, based on his own testimony, Erwin knew the sale was unlikely to go forward. Based on this evidence and the relevant law, defendants satisfied their initial burden.

Erwin claims that because the ex parte order "presupposed that a sale would go forward," any actual injury was dependent on the sale itself failing to proceed. But this is incorrect, and fails to meet Erwin's burden to raise a triable issue of fact. (*Aguilar v. Atlantic Richfield Co.*, *supra*, 25 Cal.4th at p. 850.) Based on Erwin's own testimony, he knew the sale was likely to fail. This constituted an "impairment or diminution . . . of a right or remedy" (*Jordache, supra,* 18 Cal.4th at p. 750), sufficient to begin the running of the statute of limitations. As Erwin's cause of action was not filed until more than a year later, it was time-barred.

7

*C. Causation*

Even though the statute of limitations issue was sufficient grounds on which to base summary judgment, in the interests of not leaving the plaintiff with the feeling that he lost this case on a technicality, we will say a word or two about causation.

To establish malpractice, the attorney's purported error was the legal cause of the plaintiff's alleged damage. (*Coscia v. McKenna & Cuneo* (2001) 25 Cal.4th 1194, 1199-1200.) To establish causation, the plaintiff must either show that but for the negligence, the harm would not have occurred, or negligence was a concurrent, independent cause of the harm. (*Viner v. Sweet* (2003) 30 Cal.4th 1232, 1241.) While this is generally a factual issue, it can be decided as a matter of law when reasonable minds cannot differ. (*Blanks v. Seyfarth Shaw LLP* (2009) 171 Cal.App.4th 336, 358.)

The trial court concluded: "Defendants first argue the alleged malpractice was not the proximate cause of Plaintiff's claimed injury because there is no evidence Tina ever signed the Bifurcated Judgment, or ever intended to do so. As a result, Defendants contend the failure to file such a document cannot be malpractice as an unsigned stipulation would have no effect. This argument is compelling. It cannot be malpractice to fail to file a stipulation that a necessary party did not sign. Plaintiff now argues Defendants failed to follow up to seek that signature, and failed to inform Plaintiff no signature had been obtained. . . . However, that is insufficient to establish a 'but for' causal connection to the alleged harm here. Nor does it appear to be sufficient even to support a concurrent independent cause claim, as the possibility that Tina would have signed if Defendants had followed up appears to be premised upon sheer speculation. [¶] Nor does there appear to be any evidence to establish a causal connection between any loss Plaintiff allegedly suffered and the proposed Bifurcated Judgment in any event. Plaintiff speculates that if Defendants had procured a signature for and then filed that Bifurcated Judgment, the family law court could not or would not have entered the Ex Parte Order at issue. However, that appears to be sheer speculation. Nor is it supported

8

by any of the evidence presented, as it is undisputed Tina's *ex parte* application was not based on any claimed right to the assets to be sold. . . . Nor was she asking to prevent the sale. . . . Instead she asked to preserve the sale proceeds as they could be the only funds available to Plaintiff to 'equalize' the community estate, which resulted in an order to secure the proceeds 'pending further Court Order or written agreement of the parties.'" (Boldface omitted.)

The trial court's analysis is completely correct. Erwin now argues that even without Tina's signature, he could still have sought a bifurcation and the court could not have retained open-ended jurisdiction upon a bifurcated judgment. This, however, is irrelevant and speculative. Even if defendants had done everything Erwin argues they should have done, the court could still have entered the ex parte order, and the sale of the salon would still have failed to close as a result. Accordingly, causation was a valid independent ground for summary judgment.

III

DISPOSITION

The judgment is affirmed. Defendants are entitled to their costs on appeal.

MOORE, ACTING P. J.

WE CONCUR:

ARONSON, J.

FYBEL, J.

9