Filed 9/18/24  Lashinsky v. Law Offices of Catharine Kroger-Diamond CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| ASHLYN LASHINSKY, | D083058 |
| Plaintiff and Appellant, | |
| v. | (Super. Ct. No. 37-2022-00003856-CU-PN-NC) |
| LAW OFFICES OF CATHARINE KROGER-DIAMOND et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of San Diego County, Earl H. Maas, III, Judge.  Affirmed.

Law Office of David W. Allor, David W. Allor and Birgit Dominguez for Plaintiff and Appellant.

Wingert Grebing Brubaker & Juskie, Charles R. Grebing and Pragya Sharma for Defendants and Respondents.

Plaintiff and appellant Ashlyn Lashinsky appeals from a summary judgment in favor of defendants and respondents Catharine E. Kroger-Diamond and her law firms, the Law Offices of Catharine Kroger-Diamond and the Law Offices of Kroger-Diamond & Campos (collectively Kroger-Diamond), who had represented Lashinsky in pursuing a personal injury claim. After Lashinsky replaced Kroger-Diamond with new counsel, the personal injury defendants obtained summary judgment on grounds the Medical Injury Compensation Reform Act (MICRA) one-year statute of limitations barred Lashinsky's negligence claim, and Lashinsky sued Kroger-Diamond for legal malpractice. On Kroger-Diamond's motion, the trial court granted summary judgment, ruling Lashinsky's legal malpractice claim was time-barred under Code of Civil Procedure[1] section 340.6's one-year statute of limitations, ruling the statute of limitations lapsed—and Lashinsky suffered actual injury—when the MICRA limitations period lapsed, not when the trial court in the personal injury matter ruled it had lapsed.

Lashinsky contends the court erred by its ruling as she was not actually injured by Kroger-Diamond's legal malpractice until May 2021, when the trial judge in the personal injury matter issued the summary judgment ruling in the personal injury defendants' favor, and thus her January 2022 legal malpractice action was timely. We conclude Lashinsky suffered actual and definite harm once the personal injury defendants raised an objectively viable MICRA statute of limitations defense, which resulted in the loss or diminution of Lashinsky's remedy against them. Accordingly, we affirm the judgment.

---

[1] Undesignated statutory references are to the Code of Civil Procedure.

FACTUAL AND PROCEDURAL BACKGROUND

In April 2017, Lashinsky suffered personal injuries when the driver of an ambulance she was riding in hit a concrete pole. Days after the accident, Lashinsky retained Kroger-Diamond to prosecute a personal injury claim against the ambulance driver and his employer. In February 2019, Lashinsky retained new counsel and filed her personal injury lawsuit in April 2019. The personal injury defendants answered the complaint, alleging in part that it was "barred by the provisions of sections 335.1, 337, 338, and 339 . . . , and any other applicable statutes of limitations."

In December 2020, the personal injury defendants moved for summary judgment on grounds the MICRA one-year statute of limitations barred Lashinsky's claims. In May 2021, the trial court in the personal injury matter granted the personal injury defendants' motion. Lashinsky unsuccessfully appealed that judgment. (*Lashinsky v. Breda* (Mar. 8, 2023, D079538) [nonpub. opn.].)[2]

---

[2]     The trial court ruled the ambulance driver was a health care provider under MICRA, and his alleged negligent conduct occurred while he was engaged in professional services that the urgent care facility required. (*Lashinsky v. Breda*, *supra*, D079538.) We affirmed, relying in part on *Canister v. Emergency Ambulance Services, Inc.* (2008) 160 Cal.App.4th 388, 404-405 [holding "as a matter of law, that the act of operating an ambulance to transport a patient to or from a medical facility is encompassed within the term 'professional negligence' "; " 'emergency ambulance service' encompasses all services rendered by emergency ambulances, even if the ambulance is engaged in nonemergency interfacility transfers"] and *Flores v. Presbyterian Intercommunity Hospital* (2016) 63 Cal.4th 75, 88 ["A hospital's negligent failure to maintain equipment that is necessary or otherwise integrally related to the medical treatment and diagnosis of the patient implicates a duty that the hospital owes to a patient by virtue of being a health care provider" implicating the one-year MICRA limitations period]. We held the

On January 31, 2022, Lashinsky sued Kroger-Diamond for legal malpractice, alleging, among other negligent acts, that Kroger-Diamond failed to file Lashinsky's personal injury lawsuit within the MICRA statute of limitations. More specifically, Lashinsky alleged Kroger-Diamond failed to conduct proper legal research or analysis and determine MICRA's potential application, and breached her duty of care by not filing a complaint within one year of the accident, inside the MICRA limitations period.[3]

---

ambulance driver, who was licensed to transport individuals by ambulance to medical facilities in connection with his employment, was "executing a medical service deemed necessary or integrally related to Lashinky's child's care" as "[t]he child's transportation by ambulance was required by the urgent care facility." (*Lashinsky v. Breda*, *supra*, D079538.) Since our decision upholding application of the one-year MICRA statute of limitations in this context, the Supreme Court granted review to decide the following question: "Does the one-year statute of limitations in [MICRA] apply to a personal injury claim alleging that the plaintiff's vehicle was struck by a negligently driven ambulance?" (<https://appellatecases.courtinfo.ca.ca.gov/search/case/mainCaseScreen.cfm?dist=0&doc_id=2870357&doc_no=S2832128>; see *Gutierrez v. Tostado*, March 20, 2024, S283128).)

[3] In part, Lashinsky alleged: "Defendants, and each of them, had a duty of care to their client to diligently and reasonably provide professional services as her attorneys. This duty of care included timely filing a lawsuit against [the ambulance driver], and employer, Americare Medical Services, and any other parties responsible for her harm. Defendants, and each of them, owed a duty of care as attorneys to research and know the statute of limitations which limited the time which any cause of action [*sic*] must be brought. Defendants, and each of them, breached their duty of care by failing to conduct reasonable legal research and failing to determine that her action for personal injuries was subject the [*sic*] provisions of MICRA and a one-year statute of limitations. Defendants and each of them breached their duty of care to advise their client, . . . Lashinsky, that her bodily injury claim was subject to MICRA and a one-year statute of limitations. Defendants and each of them breached their duty of care by failing to timely file a complaint within the one-year statute of limitations."

4

Kroger-Diamond moved for summary judgment, arguing Lashinsky was on notice of her potential legal malpractice claim either when she terminated Kroger-Diamond's representation and retained new counsel, when her new attorney filed the personal injury complaint on her behalf, or by the time the personal injury defendants moved for summary judgment. She argued Lashinsky was actually injured when the one-year statute of limitations lapsed, or she incurred attorney fees caused by the malpractice, or when the personal injury defendants asserted an objectively viable defense. Kroger-Diamond argued based on these principles that Lashinsky could not dispute the one-year legal malpractice limitations period of section 340.6 began no later than December 21, 2020, and expired on December 21, 2021, two months before she filed her malpractice complaint.

In opposition, Lashinsky argued the statute of limitations was tolled until she was actually injured by Kroger-Diamond's negligence, which occurred when the court in the personal injury action granted summary judgment. She submitted a declaration from her counsel, who averred that when the ambulance driver filed his answer to Lashinsky's complaint, that defendant asserted affirmative defenses that the action was barred by the statute of limitations, but not based upon section 340.6. Lashinsky's counsel stated that the driver's answer did not mention MICRA's application. Counsel acknowledged that the ambulance driver moved for summary judgment based on MICRA's limitation period on December 21, 2020. Lashinsky argued that when she filed suit against the ambulance driver, it was uncertain whether he would assert that MICRA applied and if so, whether the court would treat his conduct as professional or ordinary negligence, and thus she had not yet been harmed by Kroger-Diamond's unreasonable decision. According to Lashinsky, until the court granted

5

summary judgment, she only had a potential injury that was contingent on the court's ruling. Further, her new counsel worked on a contingency basis and because the contingency did not arise, she was not responsible for paying for costs or attorney fees for the time her counsel spent defending the summary judgment motion.[4]

The trial court granted Kroger-Diamond's motion, relying on *Sharon v. Porter* (2019) 41 Cal.App.5th 1. It found " 'actual injury' occurred no later than April 18, 2018—one year after [Lashinsky] was injured." The court reasoned: "By this point, [Kroger-Diamond's] ability to successfully bring a personal injury action under MICRA had lapsed. Contrary to [Lashinsky's] unsupported insinuation, [her] ability to successfully bring a personal injury action against the [personal injury] defendants was independent of when the trial court ultimately determined [her] personal injury action was untimely. . . . Put another way, 'actual injury' occurred when the statute of limitations lapsed, not when [the trial court in the personal injury action] ruled the statute of limitations had lapsed." The court further ruled the personal injury defendants' service of their summary judgment motion put Lashinsky on notice of Kroger-Diamond's potential negligence in failing to file a personal injury lawsuit before expiration of the MICRA one-year statute of limitations. The court rejected Lashinsky's argument that her legal malpractice action

---

[4]     This argument was again supported by Lashinsky's counsel's declaration: "My client was not injured by defendants' negligence until the motion for summary judgment was granted. Until that time there was only a potential for injury which was contingent upon defendant raising the statute of limitations defense and the court granting the motion. My firm represented Ms. Lashinsky in her case against [the driver] on a contingency fee, which was contingent upon money being recovered from [the driver]. If that contingency did not occur then she did not owe attorney fees or costs. As plaintiff was unable to recover any money from [the driver], she did not owe fees or costs in the prosecution of the case against him."

would have been premature and subject to demurrer had she filed it before the trial court granted summary judgment in the personal injury action.

Lashinsky filed this appeal from the ensuing judgment.

DISCUSSION

I. *Summary Judgment Principles and Standard of Review*

A summary judgment motion "shall be granted if all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (§ 437c, subd. (c).) "[F]rom commencement to conclusion, the party moving for summary judgment bears the burden of persuasion that there is no triable issue of material fact and that he is entitled to judgment as a matter of law. . . . There is a triable issue of material fact if, and only if, the evidence would allow a reasonable trier of the fact to find the underlying fact in favor of the party opposing the motion in accordance with the applicable standard of proof." (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850; *Rheinhart v. Nissan North America, Inc.* (2023) 92 Cal.App.5th 1016, 1023.)

"[A] defendant moving for summary judgment on an affirmative defense, as here, has an initial burden of producing evidence to establish a prima facie showing of the nonexistence of any triable issue of material fact as to each element of that defense. [Citations.] If the defendant makes this showing, the burden shifts to the plaintiff to show with admissible evidence that a triable issue of material fact exists." (*Rheinhart v. Nissan North America, Inc., supra*, 92 Cal.App.5th at p. 1024, in part citing *Aguilar v. Atlantic Richfield Co., supra,* 25 Cal.4th, at p. 850; § 437c, subds. (o)(2), (p)(2).)

We review de novo the propriety of the trial court's grant of summary judgment. (*California Medical Assn. v. Aetna Health of California Inc.* (2023)

7

14 Cal.5th 1075, 1087.) "In practical effect, we assume the role of a trial court and apply the same rules and standards governing a trial court's determination of a motion for summary judgment." (*Truong v. Glasser* (2009) 181 Cal.App.4th 102, 109.) But the "trial court's stated reasons for granting summary judgment do not bind us; we review the court's ruling, not its rationale." (*Citizens for Odor Nuisance Abatement v. City of San Diego* (2017) 8 Cal.App.5th 350, 358.) Like the trial court, we must view the evidence in the light most favorable to Lashinsky and draw all reasonable inferences in her favor. (*California Medical Assn.*, at p. 1087.) We "assess whether the evidence would, if credited, permit the trier of fact to find in favor of the party opposing summary judgment under the applicable legal standards." (*Truong*, at p. 110.) "[A]ny doubts as to the propriety of granting a summary judgment motion should be resolved in favor of the party opposing the motion." (*Reid v. Google, Inc.* (2010) 50 Cal.4th 512, 535.)

## II. *Legal Malpractice and Its Statute of Limitations*

"[T]he elements for a legal malpractice cause of action in California are: '(1) the duty of the attorney to use such skill, prudence, and diligence as members of his or her profession commonly possess and exercise; (2) a breach of that duty; (3) a proximate causal connection between the breach and the resulting injury; and (4) actual loss or damage resulting from the attorney's negligence.' " (*Akhlaghpour v. Orantes* (2022) 86 Cal.App.5th 232, 254-255, quoting *Coscia v. McKenna & Cuneo* (2001) 25 Cal.4th 1194, 1199.)

Section 340.6, the applicable statute of limitations for legal malpractice

8

claims,[5] states " 'two distinct and alternative limitation periods: *one* year after actual or constructive *discovery,* or *four* years after *occurrence* (the date of the wrongful act or omission), whichever occurs first.' " (*Samuels v. Mix* (1999) 22 Cal.4th 1, 7.) " '[D]iscovery of the negligent act or omission initiates the [one-year] statutory period . . . .' " (*Id.* at pp. 6-7, quoting *Adams v. Paul* (1995) 11 Cal.4th 583, 589, fn. 2 (lead opn. of Arabian, J.).) Thus, " 'a cause of action for legal malpractice accrues when the client discovers or should discover the facts essential to the malpractice claim, and suffers appreciable and actual harm from the malpractice . . . .' " (*Samuels v. Mix*, at p. 11.) "The mere breach of a professional duty, causing only nominal damages, speculative harm, or the threat of future harm—not yet realized—does not suffice to create a cause of action for negligence." (*Jordache Enterprises, Inc. v. Brobeck, Phleger & Harrison* (1998) 18 Cal.4th 739, 750 (*Jordache*).) "[A]ctual injury may consist of impairment or diminution, as well as the total loss or extinction, of a right or remedy." (*Ibid.*, citing *Adams v. Paul*, at p. 590 ["the loss or diminution of a right or remedy is well recognized as constituting injury or damage"], 591, fn. 5; *Sharon v. Porter*, *supra*, 41 Cal.App.5th at p. 8.)

Further, the limitations period is triggered not by discovery of legal theories, but by the plaintiff learning the facts of the wrongful act or

---

5     Section 340.6 provides in part: "An action against an attorney for a wrongful act or omission, other than for actual fraud, arising in the performance of professional services shall be commenced within one year after the plaintiff discovers, or through the use of reasonable diligence should have discovered, the facts constituting the wrongful act or omission, or four years from the date of the wrongful act or omission, whichever occurs first." (§ 340.6, subd. (a).) With an exception not applicable here, "the time for commencement of legal action . . . shall be tolled during the time that . . . [¶] . . . The plaintiff has not sustained actual injury." (§ 340.6, subd. (a)(1).)

omission.  This court has stated:  "Absent tolling, a legal malpractice action accrues, and the one-year limitations period . . . is triggered when the client discovers, or should have discovered, the facts constituting the wrongful act or omission and 'not by his discovery that such facts constitute professional negligence, i.e., by discovery that a particular legal theory is applicable based on the known facts.  "It is irrelevant that the plaintiff is ignorant of his legal remedy or the legal theories underlying his cause of action." ' " (*Truong v. Glasser*, *supra*, 181 Cal.App.4th at p. 110.)

"Even where the plaintiff has discovered the facts constituting the negligent conduct, the statute provides for tolling under limited circumstances.  . . .  [I]f the plaintiff has not sustained actual injury, the one-year statute is tolled." (*Truong v. Glasser*, *supra*, 181 Cal.App.4th at pp. 110-111.)  "There is no bright-line rule to apply in determining when actual injury has occurred within the meaning of section 340.6  [Citation.]  'Instead, actual injury issues require examination of the particular facts of each case in light of the alleged wrongful act or omission.' [Citation.]  Although it is well settled that 'determining when actual injury occurred is predominantly a factual inquiry[,] [citations] [w]hen the material facts are undisputed, the trial court can resolve the matter as a question of law in conformity with summary judgment principles.' " (*Id.* at p. 111; see also *Jordache, supra,* 18 Cal.4th at p. 751; *Adams v. Paul*, *supra*, 11 Cal.4th at p. 592.)

We are guided by principles expressed by the California Supreme Court in *Jordache*, *supra,* 18 Cal.4th 739 and *Adams v. Paul, supra,* 11 Cal.4th 583, on which Lashinsky relies.  In *Jordache*, the plaintiff alleged its former attorneys "failed to advise it about, or to assert a timely claim to, liability insurance benefits covering a third party's suit against the client.  The client acknowledged it discovered its attorneys' alleged malpractice more than one

10

year before it commenced this action.  However, the client also contend[ed] it did not sustain actual injury until it later settled its action against its insurer for less than the full benefits it claimed." (*Jordache*, 18 Cal.4th at p. 743.)

The Supreme Court in *Jordache* concluded that actual injury occurred before the client's settlement with the insurer.  "Actual injury occurs when the client suffers any loss or injury legally cognizable as damages in a legal malpractice action based on the asserted errors or omissions." (*Jordache, supra,* 18 Cal.4th at p. 743.)  "Here, the attorneys' alleged neglect allowed the insurers to raise an objectively viable defense to coverage under the policies.  The insurers' assertion of this defense necessarily increased the client's costs to litigate its coverage claims and reduced those claims' settlement value.  [Citation.]  Moreover, because of the attorneys' alleged neglect, the client provided its own defense in the third party action for several years.  Consequently, the client not only lost a primary benefit of liability insurance [citation], it also lost profitable alternative uses for the substantial sums it paid in defense costs.  These detrimental effects of the attorneys' alleged neglect were not contingent on the outcome of the coverage action.  Further, that action could not establish either a breach of a duty to provide timely insurance advice or a causal relationship between the alleged neglect and the claimed damages.  Instead, the coverage action settlement simply reflected the client's preexisting predicament—the attorneys' alleged omissions had diminished the client's right to its liability insurance benefits.  [¶]  The loss or diminution of a right or remedy constitutes injury or damage.  [Citation.]  Neither uncertainty of amount nor difficulty of proof renders that injury speculative or inchoate.  [Citation.]  The coverage action settlement was not the first realization of injury from the alleged malpractice; the settlement

11

simply resolved one alternative means to mitigate that injury." (*Id.* at pp. 743-744.)

*Jordache* confirmed more generally: "There is no requirement that an adjudication or settlement must first confirm a causal nexus between the attorney's error and the asserted injury." (*Jordache, supra,* 18 Cal.4th at p. 752.) In that case, "the result of Jordache's coverage litigation could only confirm, but not create, Jordache's actual injuries from the late tender of the [third party] action's defense." (*Id.* at p. 753.) "Jordache's injuries were not speculative or contingent until the trial court ruled the insurers had a duty to defend Jordache and Jordache settled its coverage claims. . . . [S]peculative and contingent injuries are those that do not yet exist, as when an attorney's error creates only a potential for harm in the future. [Citation.] An existing injury is not contingent or speculative simply because future events may affect its permanency or the amount of monetary damages eventually incurred. [Citations.] Thus, we must distinguish between an actual, existing injury that might be *remedied or reduced* in the future, and a speculative or contingent injury that might or might not *arise* in the future." (*Id.* at p. 754.) According to *Jordache*, "a prospective malpractice plaintiff could influence the course of the collateral suit and the timing of its conclusion. A rule that invariably tolls the limitations period if collateral litigation might affect damages conflicts with section 340.6's terms and is inimical to its purposes. . . . Delaying recognition of actual injury until related litigation concludes would give a client who has sustained actionable damages, and who is aware of the attorney's error, unilateral control over the limitations period." (*Id.* at p. 755.)

*Jordache* in turn cited *Adams v. Paul,* which was decided in a more analogous context, that is, a client's claim that counsel misadvised her about

12

the statute of limitations for an underlying wrongful death action, resulting in her settling and dismissing the action for substantially less than she should have without the limitations defense. (*Adams v. Paul, supra,* 11 Cal.4th at pp. 586-587.) In *Adams*, the court (in a lead opinion by Justice Arabian with a concurrence from Justice Kennard) emphasized that statute of limitations issues in legal malpractice cases were "at base factual inquiries" (*id.* at p. 588) and "may be resolved 'as a matter of law' only if the *facts* are undisputed." (*Id.* at p. 589.) *Adams* explained: "In the 'classic' missed statute situation, in which the attorney negligently fails to file the underlying lawsuit within the applicable statutory period and does nothing further, the plaintiff suffers actual harm at the time the statutory period lapses because, assuming the claim was otherwise viable, the right and/or remedy of recovery on the action has been substantially impaired. [Citations.] Despite uncertainty of amount or difficulty of proof [citation], the fact of harm would not be speculative or inchoate. [Citations.] . . . [¶] In other circumstances, the actual loss of the underlying remedy may remain contingent, that is, the attorney's negligence may have created only the potential for future harm. [Citations.] Notwithstanding apparent expiration of the statutory period, questions of waiver, estoppel, or even the applicable limitations period may raise factual issues concerning when the attorney's negligence caused definite and certain injury or more than nominal or insubstantial damages." (*Adams v. Paul, supra,* 11 Cal.4th at pp. 589-591.)[6]

---

[6]     In discussing the "other circumstances" involving contingent harm, *Adams* cited cases involving alleged malpractice in drafting wills or preparing trust and/or probate documents. (*Adams v. Paul, supra,* 11 Cal.4th at pp. 590-591.) *Adams* cited *Benard v. Walkup* (1969) 272 Cal.App.2d 595,

The court continued: "Consistent with the rule and rationale we articulate, it is important to note that in these latter situations of contingent or speculative harm, the determination of actual injury does not necessarily depend upon or require some form of final adjudication, as by judgment or settlement. ' "[A]n injury does not disappear or become suspended because a more final adjudication of the result is sought." [Citation.]' [Citation.] In addition . . . 'the facts may demonstrate that plaintiff suffered damage when . . . compelled to "incur and pay attorney's fees and legal costs and expenditures" ' as the result of the malpractice. [Citation.] It would be for the trier of fact to determine when the requisite harm actually did occur as a consequence of the attorney's negligence. [Citation.] Of course, if the facts are undisputed, the trial court can resolve the question as a matter of law in accordance with the general principles governing summary judgment." (*Adams v. Paul, supra,* 11 Cal.4th at pp. 591-592, fns. omitted.)

*Adams* made clear that courts must eschew bright-line rules in these circumstances. (*Adams v. Paul, supra,* 11 Cal.4th at p. 591, fn. 4.) In part, it pointed out that another missed statute case—*Finlayson v. Sanbrook* (1992) 10 Cal.App.4th 1436—"correctly recognized" that an adverse judgment did not "demark . . . the categorical point of actual injury for all attorney malpractice actions." (*Adams,* at p. 591, fn. 4.) But it disapproved *Finlayson*

---

for the proposition that the applicable limitations period may raise factual questions about when an attorney's negligence caused injury. (*Adams*, at p. 591.) In *Benard*, the question was not what statute of limitations applied to the underlying personal injury action in which the attorney committed malpractice, but the applicable limitations period for the malpractice action itself, which was predicated on a contingent fee agreement. (*Benard*, at p. 601.) The Court of Appeal, in a non-summary-judgment context, held the four-year limitations period applied to the breach of contract claim, which was based on a written agreement. (*Id*. at p. 605.)

to the extent it suggested as a bright-line principle that actual injury occurred when the underlying statute of limitations expired. (*Ibid.*) *Adams* also disapproved the "reasoning, if not the result" (*ibid.*) of another missed-statute case, *Pleasant v. Celli* (1993) 18 Cal.App.4th 841, 847, which reached the opposite conclusion, declining to follow *Finlayson* and applying the sort of bright line principles *Adams* had rejected to hold that a plaintiff in such cases did not suffer actual injury until a court determination and dismissal of the plaintiff's case. (*Pleasant v. Celli, supra*, 18 Cal.App.4th at p. 850.[7])

*Adams* explained the importance of keeping actual injury a fact question: "Retaining the question of actual injury as a factual inquiry in missed statute cases . . . serves reasonably to accommodate the conflicting policy considerations implicated. Although sometimes characterized as a 'technical defense' allowing a defendant 'to obtain an unconscionable advantage and enforce a forfeiture' [citation], statutes of repose are in fact favored in the law, 'designed to promote justice by preventing surprises through the revival of claims that have been allowed to slumber until

---

[7] *Pleasant v. Celli* held the "actual harm to [the plaintiff] continued to be merely prospective until (1) the medical defendants recognized a potential statute of limitations defense, (2) asserted the defense, (3) fought [plaintiff's] tolling and other arguments through demurrer and summary judgment, and (4) succeeded in having [plaintiff's] case dismissed. Until that point, when the 'fact' of damage was judicially determined, [the attorney's] breach of professional duty caused only an unrealized threat of future harm." (*Pleasant v. Celli, supra*, 18 Cal.App.4th at p. 850.) That court concluded: "In short, in [missed] statute of limitations cases, actual and appreciable harm may *never* occur, and the plaintiff's rights may never be invaded despite the attorney's 'wrong,' if no one ever spots the issue as a potential defense. It is unproductive to require a plaintiff to file a precautionary legal malpractice suit in anticipation of losing on an issue that may never arise, or, if it does arise, may be resolved against the defendants in the underlying suit." (*Ibid.*)

15

evidence has been lost, memories have faded, and witnesses have disappeared. The theory is that even if one has a just claim it is unjust not to put the adversary on notice to defend within the period of limitation and that the right to be free of stale claims in time comes to prevail over the right to prosecute them.' [Citation.] Since plaintiffs are also protected by the discovery and continuing representation provisions of section 340.6, it does not seem unfair to allow for actual injury to arise at some point short of an adverse judgment or settlement, and as early as the time when the underlying statute of limitations expired, depending upon the facts. [¶] As to concerns for the premature filing of legal malpractice claims and the risk of inconsistent pleadings or judgments, they can be readily overcome under existing law. Statutory provisions permit consolidation or coordination of related actions. [Citations.] Alternatively, trial courts have inherent authority to stay malpractice suits, holding them in abeyance pending resolution of underlying litigation. [Citations.] Moreover, a party may plead in the alternative and may make inconsistent allegations." (*Adams v. Paul, supra,* 11 Cal.4th at pp. 592-593.)

*Adams* held the trial court erred by sustaining a demurrer and remanded the matter for further proceedings. In doing so, it observed, "[T]he trial court sustained defendant's demurrer, citing *Finlayson v. Sanbrook, supra*, 10 Cal.App.4th 1436, and thus found plaintiff's malpractice action time-barred as a legal question rather than as a matter of law on undisputed facts. Although for a different reason, the Court of Appeal reached the same result without consideration of any factual record. Both determinations were inconsistent with the rule we reaffirm that actual injury is generally a question of fact. On remand, the matter should be reconsidered and resolved on that basis. Although at least two possibilities are suggested on plaintiff's

16

pleadings short of the adverse settlement, i.e., when the underlying statutory period expired and when plaintiff first had to oppose the limitations defense, the facts may reveal other possibilities including the settlement.  If the parties agree on the sequence of events and any other material matters, the court may then determine on summary judgment the point at which the fact of damage became palpable and definite even if the amount remained uncertain, taking into consideration all relevant circumstances." (*Adams v. Paul, supra,* 11 Cal.4th at p. 593.)

Justice Kennard agreed with the lead opinion to the extent it affirmed that "(1) actual injury is not established by the mere expiration of the limitations period on the client's claim against the third party [citation], and (2) determining actual injury may require resolution of factual issues such as which limitation period applies to the third party claim and whether the third party waived or would be estopped to assert a defense based on expiration of the limitations period." (*Adams v. Paul*, *supra*, 11 Cal.4th at p. 596 (conc. opn. of Kennard, J.).)  She did not agree with the suggestion that expiration of the statute of limitations, without more, could constitute actual injury.  (*Ibid*.)  She pointed out statutes of limitation are affirmative defenses that are "forfeited if not appropriately invoked by the defendant" and unless that is done, "the expiration of the statutory period does not affect even the remedy." (*Id*. at p. 597.)  "[E]xpiration of a limitation period results in no present impairment of the claim, but only the threat of future loss contingent on another party's willingness and ability to assert the statute of limitations as a defense." (*Ibid*.)  Justice Kennard emphasized that her conclusion "does not mean, however, that a client cannot bring a malpractice action against an attorney for a 'missed statute' unless and until the third party has *successfully* asserted a defense based on the statute of limitations." (*Id*. at p.

17

598, italics added.) She explained that if a client does not file suit on a third party claim, determining actual damages may require answering factual questions such as whether filing suit would have been futile or imprudent, implicating other fact questions such as which statute of limitations applied to the third party claim, and whether the third party waived or was estopped from asserting the defense. (*Id.* at p. 599.)

III. *Assertion that the Underlying Summary Judgment Ruling Triggered Actual Injury*

On appeal, Lashinsky does not raise issues concerning her discovery of the facts constituting Kroger-Diamond's alleged professional negligence.[8] Nor is this a case involving tolling by counsel's continuous representation. Rather, asserting she did not incur costs or attorney fees in the underlying personal injury matter and the only evidence of actual harm raised was the loss of her negligence action, Lashinsky contends she "did not suffer actual appreciable harm until [the underlying summary judgment] adverse ruling occurred." She maintains the harm to her was contingent until that time, as "[a] statute of limitations defense must be raised in the answer and proved or it is waived and it does not have an automatic and immediate impact on the rights of the parties." Lashinsky advances several subsidiary points in making this argument and challenging the summary judgment against her. We address each in turn.

---

8     Kroger-Diamond presented evidence via Lashinsky's interrogatory responses that Lashinsky "was advised that [the personal injury] defendants were raising the [MICRA statute of limitations] issue on or about December 21, 2020[,] when they served their motion for summary judgment" and her counsel "identified the issue on or after the start of their representation on February 25, 2019."

18

A.  *Proof of Damages Via Case Within Case Method*

Lashinsky first points to case law providing that in legal malpractice cases, a plaintiff must prove nonspeculative damages via the case-within-a-case method: that "but for the negligence of the attorney, a better result could have been obtained in the underlying action."  Given this proposition, Lashinsky reasons "she would have not been able to establish the harm until there was a result in the first place against which a comparison could be made.  She suffered no other harm but the ultimate loss of that claim.  Therefore, [she] could not have been harmed before the trial court granted summary judgment to the ambulance driver."

The problem with this argument is that the case-within-a-case methodology applies only in certain legal malpractice claims, that is, when alleged malpractice occurs "in the prosecution or defense of a legal claim" (*Orrick Herrington & Sutcliffe v. Superior Court* (2003) 107 Cal.App.4th 1052, 1057), a different context than failing at all to file an action within the applicable limitations period.  (See also *Herrington v. Superior Court* (2003) 107 Cal.App.4th 1052, 1057; *DiPalma v. Seldman* (1994) 27 Cal.App.4th 1499, 1506-1507 ["One who establishes malpractice on the part of his or her attorney *in prosecuting a lawsuit* must also prove that careful management of it would have resulted in a favorable judgment and collection thereof, as there is no damage in the absence of these latter elements"].)

This case instead presents, as *Adams* characterized it, "the 'classic' missed statute situation, in which the attorney negligently fails to file the underlying lawsuit within the applicable statutory period and does nothing further . . . ." (*Adams v. Paul, supra,* 11 Cal.4th at p. 589.)  Under *Adams*, where the relevant facts and timeline are undisputed as they are here, "the plaintiff suffers actual harm at the time the statutory period lapses because,

19

assuming the claim was otherwise viable, the right and/or remedy of recovery on the action has been substantially impaired." (*Ibid*.) On this record, however, we need not apply that rule. We instead hold that when the personal injury defendants raised the MICRA statute of limitations in moving for summary judgment, Lashinsky suffered appreciable harm. It was at this point in December 2020, when they invoked an objectively viable defense, that Lashinsky's claim was concretely impaired.

That Lashinsky was ignorant of which limitations period would ultimately apply did not forestall the accrual of actual injury. "[T]he statutory scheme does not depend on the plaintiff's recognizing actual injury. Actual injury must be noticeable, but the language of the tolling provision does not require that it be noticed." (*Foxborough v. Van Atta* (1994) 26 Cal.App.4th 217, 227; accord, *Prakashpalan v. Engstrom, Lipscomb & Lack* (2014) 223 Cal.App.4th 1105, 1122 ["The fact of injury or damage need not be recognized or noticed by the plaintiff"].) As stated, once Kroger-Diamond's alleged negligence " 'gave the [personal injury defendants] an objectively viable defense' [citation] which consequently 'reduced those . . . claims' settlement value," Lashinsky was actually injured within the meaning of

section 340.6. (*Village Nurseries v. Greenbaum* (2002) 101 Cal.App.4th 26, 41-42, citing *Jordache*, *supra*, 18 Cal.4th at p. 761.)[9]

The injury sustained by Lashinsky as a result of Kroger-Diamond's alleged negligence was the lost opportunity to bring her personal injury claim and pursue a remedy. This opportunity necessarily included both the right to present the case to a jury and the prospect of a settlement before trial. It was lost no later than December 2020, when the personal injury defendants raised the MICRA limitations period in their summary judgment motion, after Kroger-Diamond allegedly breached her duty of care by failing to timely file within the MICRA limitations period. But for that breach, Lashinsky would not have lost the opportunity to pursue her claim to trial, or at least as far as a pretrial settlement. The defendant's plausible invocation of the MICRA statute of limitations is the point at which the "fact of damage

---

[9] Lashinsky maintains Kroger-Diamond did not argue or present evidence below that Lashinsky's settlement position was impaired. But Kroger-Diamond did argue in moving for summary judgment both that actual injury occurs "at the time a right or remedy is lost due to the attorney's negligence" or when a litigation adversary asserts an objectively viable defense, citing Ninth Circuit authority that in turn cited *Jordache*, *supra*, 18 Cal.4th at page 743. And she presented evidence that Lashinsky learned the personal injury defendants raised the MICRA limitations defense in December 2020 when they moved for summary judgment. In our view, on summary judgment, this was enough to shift the factual burden on Lashinsky to demonstrate the defense was either not objectively viable, or that her rights and remedies at that time—including the potential settlement value of her claim—were somehow not diminished. Kroger-Diamond also argues Lashinsky was actually injured when she incurred fees and costs to oppose the underlying summary judgment. But in this summary judgment context we are required to accept Lashinsky's evidence that she did not incur attorney fees or costs given her contingent fee agreement with counsel. Expending attorney fees is not necessary to establish the requisite injury in any event. (*Adams v. Paul*, *supra*, 11 Cal.4th at p. 591, fn. 5; *Sharon v. Porter*, *supra*, 41 Cal.App.5th at p. 8.)

became palpable and definite even if the amount remained uncertain, taking into consideration all relevant circumstances." (*Adams v. Paul, supra,* 11 Cal.4th at p. 593.) As the court explained in *Finlayson v. Sanbrook*, *supra*, 10 Cal.App.4th 1436, if the "rule demanded an adverse judgment in missed statute cases, the limitations period could be indefinitely extended simply by filing a time-barred action however late and then waiting until an adverse judgment is rendered." (*Id.* at p. 1444; see also *Croucier v. Chavos* (2012) 207 Cal.App.4th 1138, 1149 [attorney's failure to pursue enforcement of a judgment and lack of recovery caused actual injury; " 'actual injury' for purposes of section 340.6 cannot depend on absolute proof as a matter of law that damages were suffered" and "[t]here is a difference between 'an actual, existing injury that might be *remedied or reduced* in the future, and a speculative or contingent injury that might or might not *arise* in the future' "].) This reasoning applies to Lashinsky's claim that the statute of limitations defense must be "adjudicated" before actual injury results.

B. *Single Cause of Action for Negligence*

Lashinsky next argues that she had only one cause of action for negligence, whether termed original or professional negligence, contrary to Kroger-Diamond's purported suggestion to the contrary in the trial court (for which Lashinsky provides no record cite). According to Lashinsky, Kroger-Diamond had argued that because Lashinsky lost the ability to file a claim for professional negligence after one year, she was damaged at that point in time. Lashinsky states: "There was only one claim for negligence against the ambulance driver and that claim was based upon his duty of care in operating an ambulance. If the breach of that duty of care was deemed to be professional negligence, as defined by MICRA, then certain aspects of the action would be restricted, including the statute of limitations. Otherwise, if

22

MICRA did not apply the lawsuit for negligence would have proceeded without those restrictions and a longer statute of limitations would have been available."

We see the argument as cutting against Lashinsky. If she had but one negligence cause of action, then expiration of the applicable MICRA statute of limitations barred her remedy. (*Adams v. Paul*, *supra*, 11 Cal.4th at p. 589, fn. 3 ["Generally, 'the running of the statutory period does not extinguish the cause of action, but merely bars the remedy' " unless the claim is created by statute].) If Lashinsky's point is that she did not sustain injury until the trial court decided whether her single negligence claim against the ambulance driver was one for ordinary or professional negligence to which MICRA applies, it reiterates the argument rejected above.

C. *Pleading, Proving and Adjudicating the Statute of Limitations Affirmative Defense*

Asserting the statute of limitations is an affirmative defense that must be "raised, proven and adjudicated," otherwise "it has no impact on a plaintiff's lawsuit," Lashinsky makes another iteration of her argument concerning actual injury only being triggered by the grant of summary judgment: "Once the defense was raised and the motion for summary judgment was filed, the ambulance driver could have still settled the case for Lashinsky's full damages. Ruling on the ambulance driver's motion for summary judgment required the trial judge to interpret the law. If [the trial judge] had interpreted the law differently, Lashinsky would not have been harmed. If the trial judge denied the motion, even if [the court] was wrong in [its] interpretation of the law, . . . Lashinsky would still have remained unharmed by Respondents' negligence. The ambulance driver could have brought a writ, tried the case to judgment and then appealed, or he may have

23

settled.  All of these decisions would have impacted whether [Lashinsky] was injured by [Kroger-Diamond].  [¶]  Until the ambulance driver had proven all the elements to the affirmative defense and the court granted summary judgment, . . . Lashinsky had not lost her lawsuit and she had not been harmed."

Lashinsky does not argue, or cite authority demonstrating, that the personal injury defendants' invocation in their answer of "any other applicable statute of limitations" was insufficient to invoke the section 340.6 statute of limitations defense, so we do not consider that question.  As stated, Kroger-Diamond presented evidence that the personal injury defendants in fact raised the MICRA limitations period as a defense in moving for summary judgment.  We otherwise reject Lashinsky's contention.  Requiring a court determination or adjudication of which statute of limitations applies as a prerequisite to actual injury in a missed statute of limitations scenario is contrary to the principles expressed in *Jordache*, *supra* 18 Cal.4th 739, *Adams v. Paul*, *supra*, 11 Cal.4th 583 and *Finlayson v. Sanbrook*, *supra*, 10 Cal.App.4th 1436.  As long as the limitations defense was an objectively viable one, Lashinsky suffered a loss or diminution of her claim once the personal injury defendants raised it.

D.  *Kroger-Diamond's Reliance on* Sharon v. Porter *and Lashinsky's Other Cited Cases*

In yet another version of her argument, Lashinsky contends Kroger-Diamond's reliance on *Sharon v. Porter*, *supra*, 41 Cal.App.5th 1 was misplaced as the case is distinguishable.  She argues the only harm she suffered was the loss of her cause of action; she points out she did not incur costs or attorney fees before the court in the personal injury action issued its summary judgment ruling.  Lashinsky reviews other authorities—none

24

involving a missed statute of limitations[10]—in an effort to explain how the loss of her negligence claim was still speculative or contingent until that ruling. She repeats her argument that if her attorney had correctly assumed the ambulance driver committed ordinary as opposed to medical negligence, she would not have been harmed. "Hence, all of her harm was contingent upon whether the court would conclude that the ambulance driver's negligence was medical negligence and not ordinary negligence. Any such conclusion, would be contingent upon the affirmative defense being raised and proven. Therefore, . . . Lashinsky had not suffered actual palpable damage until the affirmative defense had raised and proven and the trial

---

[10] Lashinsky cites *Baltins v. James* (1995) 36 Cal.App.4th 1193, 1195-1197 [negligent advice about transferring property; applying a now-rejected "bright line test" based on the outcome of a litigated or negotiated determination], disapproved by *Jordache, supra*, 18 Cal.4th at p. 761, fn. 9; *Fritz v. Ehrmann* (2006) 136 Cal.App.4th 1374, 1377, 1391 [malpractice in drafting a promissory note; court ultimately concluded the former attorney continued to represent the client such that on summary judgment he did not establish the statute of limitations had run]; *Shopoff & Cavallo LLP v. Hyon* (2008) 167 Cal.App.4th 1489, 1509-1511 [allegations that client was induced to agree to a global settlement stated only speculative or future harm as the value of the property awarded under the settlement was unknown and contingent on the amount of eventual liquidation of proceeds or default of debt, which had not occurred]; *Walker v. Pacific Indem. Co.* (1960) 183 Cal.App.2d 513, 514, 517-519 [insurance broker's negligent procurement of auto liability insurance policy for amount less than that ordered by car owner; the shortage of coverage exposed the insured to possible liability, but fact of damage was uncertain until judgment in the personal injury action]; and *International Engine Parts v. Feddersen & Co.* (1995) 9 Cal.4th 606, 608, 622 [accountant's negligent filing of tax returns; limitations commenced at the time IRS actually assessed the tax deficiency].) *Feddersen*, in particular, "presented specialized circumstances and did not articulate a rule of broad or general applicability"; it "does not, and was not, intended to provide rules for legal malpractice actions . . . ." (*Jordache*, at pp. 763, 764.)

25

court had interpreted the law favorable to the ambulance driver and adjudicated that defense in his favor."

*Sharon* involved alleged malpractice by an attorney who represented the plaintiff in obtaining a default judgment, which turned out to be void and the trial court eventually vacated. (*Sharon v. Porter, supra,* 41 Cal.App.5th at pp. 3-4.) In a bench trial of her malpractice claim, the court found the plaintiff had not suffered actual injury, and the limitations period had not commenced, until she began to incur hourly attorney fees to address the malpractice and thus her suit was timely. (*Id.* at p. 6.) The Court of Appeal reversed. (*Id.* at pp. 4, 12.) Citing case law invoking *Jordache*'s rule about a party asserting an objectively viable defense (*Jordache, supra,* 18 Cal.4th at p. 761), the court held the "void nature of the . . . judgment sufficiently diminished [the plaintiff's] remedy against the [defendants] by no later than November 2015," which was the point at which an attorney warned her of legal liability if she persisted in attempting to enforce a void judgment. (*Sharon v. Porter,* at p. 9.) By then, the plaintiff's "negotiating position against [the defendants] had been weakened . . . ." (*Ibid.*) Stated another way, the default judgment was void independent of the trial court vacating it, and the plaintiff had discovered that circumstance when the judgment debtor wrote to plaintiff and her new counsel claiming the judgment was void. (*Id.* at p. 4.) The plaintiff's claim in that case was time-barred independent of when she began to incur hourly fees to address the consequences of the malpractice. (*Id.* at p. 11.)

The *Sharon c*ourt found the policy interests of section 340.6 supported its conclusion: "Under [plaintiff's] view, [the] motion to vacate the judgment could have been filed 20 years in the future and a legal malpractice claim filed within 21 years would still have been timely as long as no specific

attorney fee had been charged to [plaintiff]. No authority supports that outcome." (*Sharon v. Porter*, *supra*, 41 Cal.App.5th at p. 12.)

The import of *Sharon v. Porter, supra,* 41 Cal.App.5th 1 here is not the attorney fee issue, it is the principle that when a plaintiff is made aware of an objectively viable defense that arises due to attorney malpractice such as a claim that a judgment is void, she will suffer actual injury at that time (i.e., a weakened negotiating position, or the diminution of her right or remedy), even before a court confirms the judgment was indeed void. *Sharon* is apt here because the personal injury defendants asserted the MICRA statute of limitations defense in December 2020, and the trial court did not need to finally decide the issue or dismiss the case before Lashinsky suffered actual injury—a diminished remedy—as a result. In reaching this conclusion, we do not draw bright line rules, i.e., that Lashinsky suffered actual injury when the MICRA one year limitations period lapsed; rather, on the undisputed facts presented we hold actual injury occurred once the underlying defendants asserted an objectively viable defense. The court correctly granted summary judgment on grounds Lashinsky's malpractice claim is time-barred.

DISPOSITION

The judgment is affirmed.  Catharine E. Kroger-Diamond, the Law Offices of Catharine Kroger-Diamond and the Law Offices of Kroger-Diamond & Campos shall recover their costs on appeal.

O'ROURKE, Acting P. J.

WE CONCUR:

DO, J.

BUCHANAN, J.